## UNITED STATES v. BANK OF SHELBY et al.

### No. 6993.

Circuit Court of Appeals, Fifth Circuit.

Jan. 23, 1934.

Lester G. Fant, U. S. Atty., of Holly Springs, Miss., for the United States.

J. N. Flowers and Louis C. Hallam, both of Jackson, Miss., for appellees.

Before BRYAN, SIBLEY, and HUTCH-ESON, Circuit Judges.

SIBLEY, Circuit Judge.

On March 12, 1925, the United States assessed against one Toler an additional income tax of $4,356.52. It was not paid, and, on June 17th, the Deputy Collector inquiring at the Bank of Shelby was told by the cashier that $3,646.52 stood to Toler's credit there and subject to his check. The Deputy Collector notified the bank not to allow the deposit withdrawn, saying that he would have a warrant the next day to levy on it. That same day the bank wrote to the Collector that the deposit did not really belong to Toler, but to his wife, but if held to be Toler's the bank should be allowed to offset a $10,000 note which it held against him. The following day the Deputy Collector served upon Powell, the vice president of the bank, a notice of lien for the taxes and a warrant of distress, claiming thereby to have levied on the deposit. Payment of the money was thereupon demanded and refused. The demand and refusal were repeated in February and August, 1926. The United States then sued the bank and the vice president to recover of them the amount of the deposit. They pleaded the general issue and that the bank at the time of demand did not owe Toler anything because the deposit was offset by the note, Toler being insolvent. The case was tried by the court without a jury upon an agreed statement of facts, and from a judgment for the defendants this appeal was taken.

The suit is expressly based on subsections (e) and (f) of section 1114 of the Revenue Act of 1926 (26 USCA §§ 1268a, 1269), copied in the margin.[1] This section is entitled Penalties, and embraces criminal punishments as well as the imposition of the civil liability on persons other than the taxpayer which is here asserted. It is contended on the one hand that as a penal statute it ought to be narrowly construed; that a bank deposit being a mere debt is not property or a right to property which is capable of possession or levy; and that no levy has in this case been made on it within the words of the statute. On the other hand it is urged that the statute is remedial, designed to afford a remedy effectually to assert the tax lien set up on

[1] "(e) Any person in possession of property, or rights to property, subject to distraint, upon which a levy has been made, shall, upon demand by the collector or deputy collector making such levy, surrender such property or rights to such collector or deputy, unless such property or right is, at the time of such demand, subject to an attachment or execution under any judicial process. Any person who fails or refuses to so surrender any of such property or rights shall be liable in his own person and estate to the United States in a sum equal to the value of the property or rights not so surrendered, but not exceeding the amount of the taxes (including penalties and interest) for the collection of which such levy has been made, together with costs and interest from the date of such levy.

"(f) The term 'person' as used in this section [sections 1265 to 1268a] includes an officer or employee of a corporation or a member or employee of a partnership, who as such officer, employee, or member is under a duty to perform the act in respect of which the violation occurs."

property and rights to property of the taxpayer by 26 USCA § 115, and ought to be liberally construed. We put aside these contentions without deciding them because if we treat what was done by the Deputy Collector as a garnishment and a levy within the meaning of the statute, nevertheless there was at the time no property or right to property of Toler which Toler could assert and consequently nothing which the tax could take a lien on or the tax officer could rightfully demand possession of. The agreed facts are these: Just prior to the levy Toler owned a plantation encumbered far beyond its value by several mortgages to creditors other than the bank. He was arranging to settle them except the first two for $20,000 which the bank was to lend, and two notes, each for $10,000 due in November following and secured by a second mortgage, were executed by him. The settlement fell through and the notes did not become effective, but on June 8th it was agreed that one of them should be used by the bank to take up about $6,400 of past due unsecured notes which Toler owed it, and the difference of $3,646.52 was put to his credit on the books. At the time of the levy on June 18th, the plantation was under advertisement for sale under the first mortgage and was in fact sold on June 29th, so that there was no security for the $10,000 note held by the bank, and Toler was hopelessly insolvent. The refusal to surrender the money on June 18, 1925, could impose no liability on the bank or its officer under the act of 1926, because that act did not go into effect until February 26, 1926. When the demands subsequent to that date were made, the act was in effect but the note had fallen due and was unpaid. But we pass by any difference that this might make because we think that even on June 17, 1925, the bank had a clear right to make the offset and by consequence the officer had no right to demand the money. Some courts have held that on insolvency of the customer the banker's lien authorizes the application of general deposits to unmatured notes as a legal right. The general rule in the absence of statute is that to set off an unmatured debt because of insolvency requires the action of equity; Scott v. Armstrong, 146 U. S. 499, 13 S. Ct. 148, 36 L. Ed. 1059; Hecht v. Snook, 114 Ga. 921, 41 S. E. 74; but that insolvency alone is a sufficient basis in equity for the set-off not only as between the parties but as against a receiver, an assignee for the benefit of creditors, a trustee in bankruptcy, or a garnisher. Scott v. Armstrong, supra; Nashville Trust Co. v. Fourth National Bank, 91 Tenn. 336, 18 S. W. 822, 15 L.

R. A. 710; Hayden v. Citizens' National Bank, 120 Md. 163, 87 A. 672, 46 L. R. A. (N. S.) 1059, Ann. Cas. 1915A, 686; Wunderlich v. Merchants' Nat. Bank (Armitage Herschel Co. v. Jacob Barnett Co.), 109 Minn. 468, 124 N. W. 223, 27 L. R. A. (N. S.) 811, 134 Am. St. Rep. 788, 18 Ann. Cas. 212. But there is present here another potent fact, that the two obligations arose out of the same transaction and the one is the consideration for the other. It would be manifestly inequitable to enforce one obligation when the other cannot be enforced. This element was given effect in a case from Pennsylvania, where there was no chancery jurisdiction as such, in Dushane v. Benedict, 120 U. S. at page 639 et seq., 7 S. Ct. 696, 30 L. Ed. 810. In Scott v. Armstrong, supra, the circumstances were like those of the case at bar except that it was the bank which became insolvent. It was said at page 507 of 146 U. S., 13 S. Ct. 148, 150: "Courts of equity frequently deviate from the strict rule of mutuality when the justice of the particular case requires it, and the ordinary rule is that, where the mutual obligations have grown out of the same transaction, insolvency on the one hand justifies the set-off of the debt due upon the other." In Carr v. Hamilton, 129 U. S. 252, 9 S. Ct. 295, 32 L. Ed. 669, the present worth of an unmatured insurance policy was on the failure of the insurer set off against notes secured by a mortgage, the court saying at page 255 of 129 U. S., 9 S. Ct. 295, 296: "Natural justice and equity would seem to dictate that the demands of parties mutually indebted should be set off against each other, and that the balance only should be considered as due. * * * It is difficult to see why this principle of justice should not apply to persons holding policies of life insurance in a company which becomes bankrupt and goes into liquidation. * * * If any one is indebted to the company, especially if his debt was contracted with reference to, and because of, his holding a policy, there would seem to be strong reason for allowing him a set-off, and no good reason to the contrary." In Schuler v. Israel, 120 U. S. 506, 7 S. Ct. 648, 30 L. Ed. 707, the bank was garnisheed for its insolvent customer's deposit and because the bank could by bill in chancery if not by law have set off unmatured notes held by it against the customer, though these did not appear to have arisen from the same transaction, it was held that the garnishment failed. The state's lien upon the assets of a state depository dating from the giving of the bond was held inferior to rights of set-off in State v. Brobston, Receiver, 94

540

Ga. 95, 21 S. E. 146, 47 Am. St. Rep. 138. In the case before us the bank could either at law or in equity have defeated a demand by Toler for payment on June 17, 1925, of the money apparently to his credit by offsetting the note which produced the credit, and the United States can only claim under and through him and subject to the defenses and equities affecting him. Debts thus in origin and in equity joined together could not by lien or levy be put asunder. The bank accordingly was not bound to deliver to the Collector the money demanded, and it and its officer did not become liable for the refusal.

Judgment affirmed.