[L. A. No. 22941. In Bank. Apr. 15, 1955.]

RALPH N. HIGHSMITH et al., Plaintiffs, v. MAX LAIR et al., Defendants; MORTON D. GOLDBERG et al., Respondents; UNITED STATES OF AMERICA, Appellant.

Laughlin E. Waters, United States Attorney, and Edward R. McHale, Assistant United States Attorney, for Appellant.

Maurice Rose for Respondents.

EDMONDS, J.—The question here presented for decision concerns the scope and effect of notices of tax lien of the United States of America. The appeal is from a judgment holding that the federal government may not recover from

the judgment debtors of the taxpayer the amount stated in those notices to be due for unpaid taxes, and also that it has no right to money on deposit with the municipal court.

Max Lair sued Morton and Katherine Goldberg for money assertedly due him upon a contract. After the commencement of the action, but before Lair obtained judgment for approximately $4,000, the government filed its notices of tax lien. Subsequently, and before they received actual notice of these liens, the Goldbergs acquired, in the name of H. Markus, four judgments against Lair evidencing a total indebtedness by him of about $4,200.

Levies were made by each of Lair's judgment creditors, or his assignee, upon the indebtedness evidenced by the judgment against the Goldbergs. The State also levied upon this indebtedness claiming that Lair was delinquent in the payment of taxes. The Goldbergs then deposited $4,200 with the marshal of the municipal court to the credit of Markus. This deposit was made under an agreement between the Goldbergs and Markus whereby he was to collect the amount of it from the marshal, less execution fees, and pay the balance to them. In the present action the trial court found that the Goldbergs made this deposit "in order to have the record manifest their set-offs of their acquired four judgments against said judgment in favor of Max Lair." Subsequently, upon the motion of the Goldbergs, Lair's judgment against them was satisfied of record.

The deposit is being held by the marshal pursuant to an order of the court obtained by the plaintiffs in the present suit who are alleged creditors of Lair. The prayer of the complaint was for a money judgment against him, and a declaration of the priorities of liens upon, and conflicting claims to, the indebtedness represented by the judgment obtained by Lair against the Goldbergs.

By cross-complaint, the Goldbergs named the United States of America as a cross-defendant. In its answer, the government asserted that it has first liens on the property of Lair. It asked the court to enforce those liens upon any of Lair's property held by Goldberg and, in particular, upon the deposit with the marshal. By way of cross-complaint against the Goldbergs, the government demanded a personal judgment against them. Only the government has appealed from the judgment which declared, *inter alia*, that the government never acquired any interest in the debt due from the Goldbergs to Lair, denied it the right to recover any amount

against the Goldbergs and ordered that its cross-complaint be dismissed.

The United States claims that after the notices of tax liens were recorded, it had an interest in the Goldberg's debt to Lair which could not be divested by any act of the debtors. The Goldbergs contend that the United States has no interest in the deposit because the government's liens could only extend to property of Lair. It is their position that the deposit was made to satisfy claims against Lair, and he had no interest in it at any time. They also argue that the government is not entitled to a personal judgment against them because of their right of setoff against Lair and they had no property belonging to him in their possession at the time of the government's demand. Another point relied upon is that, if the court erred in applying the principle of setoff, under the rule of res judicata, the government is bound by the order satisfying the judgment in *Lair* v. *Goldberg*. Finally, they insist that no personal judgment can be rendered against them under the provisions of section 3710(b) of the Internal Revenue Code, because, at the time of the government's demand, any property of Lair which they had in their possession had been levied upon by other creditors.

The Internal Revenue Code provides that if any person liable to pay any tax neglects or refuses to pay the same after demand, the amount, including any interest or penalty, shall be a lien in favor of the United States upon all property and rights to property, belonging to such person. (26 U.S.C., 1946 ed., § 3670.) The lien shall not be valid as against any mortgagee, pledgee, purchaser, or judgment creditor until notice thereof has been duly filed in the office of the county recorder of the county within which the property subject to the lien is situated. (26 U.S.C., 1940 ed., 1953 Pocket Supp., § 3672 (a)(1); Cal. Gov. Code, § 27330.)

In the event of the nonpayment of the amount of taxes claimed, the collector may levy upon all property and rights to property (with certain exceptions not here pertinent) belonging to such person, or on which the lien provided in section 3670 exists, for the payment of the sum due. (26 U.S.C., 1940 ed., § 3692.)

Section 3710 of the Internal Revenue Code reads: "Any person in possession of property, or rights to property, subject to distraint, upon which a levy has been made, shall, upon demand by the collector or deputy collector making such levy, surrender such property or rights to such collector or

deputy, unless such property or right is, at the time of such demand, subject to an attachment or execution under any judicial process.

"Any person who fails or refuses to so surrender any of such property or rights shall be liable in his own person and estate to the United States in a sum equal to the value of the property or rights not so surrendered, but not exceeding the amount of the taxes (including penalties and interest) for the collection of which such levy has been made, together with costs and interest from the date of such levy." (26 U.S.C., 1940 ed., § 3710.)

▇ Although by its liens the government acquired an interest as coowner of the indebtedness of Goldberg to Lair (*United States* v. *City of Greenville,* 118 F.2d 963), its rights are not greater than those of the taxpayer whose property is sought to be levied upon. (*United States* v. *Winnett,* 165 F.2d 149, 151; accord: *Karno-Smith Co.* v. *Maloney,* 112 F.2d 690, 692; *United States* v. *Graham,* 96 F.Supp. 318, 321.) " 'The proposition here laid down is in harmony with the generally recognized principle that the rights of the garnisher do not rise above, or extent beyond, those of his debtor; that the garnishee shall not, by operation of the proceedings against him, be placed in any worse condition than he would have been in, had the principal debtor's claim been enforced against him directly; that the liability, legal and equitable, of the garnishee to the principal debtor, is a measure of his liability to the attaching creditor, who takes the shoes of the principal debtor, and can assert only the rights of the latter.' . . . It would be most unfair that a third person, merely by reason of his interposition, whether he was a sovereign or not, should be able to change the rights inter sese between the obligor of the chose in action and his obligee, who is the objective of the levy or attachment." (*United States* v. *Bank of United States,* 5 F.Supp. 942, 945.)

▇ In California, "a judgment debtor who has, by assignment or otherwise, become the owner of a judgment or claim against his judgment creditor, may go into the court in which the judgment against him was rendered and have his judgment offset against the first judgment. . . . ▇ Under section 368 of the Code of Civil Procedure[1] the debtor may set off

_____

[1]Code of Civil Procedure section 368: "In the case of an assignment of a thing in action, the action by the assignee is without prejudice to any set-off, or other defense existing at the time of, or before, notice of the assignment; . . ."

claims against the creditor which were acquired after the assignment of the judgment to a third person but prior to notice to the debtor of the assignment. . . . [T]here is no room for the exercise of discretion upon this question." (*Harrison* v. *Adams*, 20 Cal.2d 646, 649 [128 P.2d 9]; also see: *Haskins* v. *Jordan*, 123 Cal. 157 [55 P. 786].) Actual notice is necessary to defeat this right. (See *McCabe* v. *Grey*, 20 Cal. 509.) The rights acquired by the government as coowner of the debt never were greater than those which would have been acquired by an assignee of Lair.

In *United States* v. *Bank of Shelby*, 68 F.2d 538, the government brought an action for penalties against the bank for refusal to surrender $3,500, the amount of the deposit of one Toler, a delinquent taxpayer. The government had assessed Toler for income taxes in March. In June, the Collector served upon the bank a notice of lien for the taxes and a warrant of distress, claiming thereby to have levied on the deposit of Toler. Just prior to the levy, Toler, to meet the claims of creditors, borrowed $10,000 from the bank, giving a mortgage on his plantation.

When Toler was unable to settle with his creditors, he and the bank agreed that, from the proceeds of the loan, he would pay the bank $6,500, the amount due to it upon his past due unsecured notes in its favor. The remaining $3,500 was credited to his account. It was held that the bank had a clear right to offset the $3,500 against the $10,000 note. At the time of the levy, said the court, "there was no property or right to property of Toler which Toler could assert and consequently nothing which the tax could take a lien on or the tax officer could rightfully demand possession of." (P. 539.) The fact that the $10,000 note and the $3,500 deposit both stemmed from the same transaction was discussed, but was not considered to be the controlling factor in the case.

The government cites *United States* v. *Winnett*, 165 F.2d 149, and *United States* v. *Graham*, 96 F.Supp. 318, as supporting its position. In the first case, the court upheld the right of setoff which Winnett obtained prior to the date the lien was claimed. The decision does not bar a right of setoff which is obtained before actual notice of tax lien, but after the lien is recorded. In the Graham case, no consideration was given to the statutes and decisions relating to rights of setoff. In that case, the lien of the federal government was upheld solely upon the basis of its rights against the taxpayer. The right of setoff may not be ignored in determining the

effect of tax liens on the claims against a debtor and the state law is controlling in a determination of those rights. (*Karno-Smith Co.* v. *Maloney*, 112 F.2d 690, 692.)

■ The Goldbergs had no notice of the federal government's liens at the time they acquired the judgments against Lair, and those judgments were properly setoff against the one in favor of Lair. Because of those setoffs there is no property in the possession of the Goldbergs against which the tax liens may be foreclosed, and no cause of action against them for a personal judgment. This conclusion makes it unnecessary to discuss other defenses against the claims of the United States.

The judgment is affirmed.

Shenk, J., Carter, J., Schauer, J., and Spence, J., concurred.

TRAYNOR, J.—I dissent.

On February 8, 1950, Lair brought an action against the Goldbergs and on March 26, 1951, he secured a judgment for $4,144.22. In the meantime, on April 13, 1950, and July 26, 1950, the United States filed notices of tax liens against Lair in Los Angeles County. Thereafter the Goldbergs purchased three judgments against Lair and another claim against him that was subsequently reduced to judgment. None of these judgments were entered, however, until after the notices of the tax liens were filed. Had Lair's creditors sought to enforce their claims against Lair instead of selling them to the Goldbergs, they could not have reached Lair's claim against the Goldbergs until the tax liens had been satisfied. (*United States* v. *Security Trust & Sav. Bank*, 340 U.S. 47, 50-51 [71 S.Ct. 111, 95 L.Ed. 53] ; *United States* v. *Acri*, 348 U.S. 211 [75 S.Ct. 239, 99 L.Ed. ——] ; *United States* v. *Liverpool & London & Globe Ins. Co.*, 348 U.S. 215 [75 S.Ct. 247, 99 L.Ed. ——].) In such case, the United States would have been free to enforce its liens against Lair's property by collecting the judgment in his favor against the Goldbergs. The question presented, therefore, is whether the Goldbergs can defeat this right of the United States by purchasing claims against Lair that but for the purchase would be subordinate to the tax liens. In my opinion, they cannot do so.

It is true that the Goldbergs did not have actual knowledge of the tax liens at the time they purchased the claims against Lair and that in the absence of federal legislation their right to setoff would not be prejudiced by an assignment without notice of the judgment against them. (*Harrison* v. *Adams*,

20 Cal.2d 646, 649 [128 P.2d 9]; Code Civ. Proc., § 368.) It bears emphasis, however, that the Goldbergs did not pay their judgment creditor without notice of the tax liens against him. Instead, they purchased claims against their creditor that were subordinate, whether they knew it or not, to the tax liens, and there is no reason why these claims should have greater value against the United States in the Goldbergs' hands than they had in the hands of the Goldbergs' assignors.

Citing *Karno-Smith Co.* v. *Maloney*, 112 F.2d 690, *United States* v. *Winnett*, 165 F.2d 149, *United States* v. *Bank of Shelby*, 68 F.2d 538, *United States* v. *Graham*, 96 F.Supp. 318, and *United States* v. *Bank of United States*, 5 F.Supp. 42, the majority opinion holds, however, that the right to setoff must be determined by state law and that the Goldbergs may not be placed in a worse position toward their creditor because the United States has intervened. The cited cases considered situations in which the right to setoff arose before the tax liens were perfected or in which the delinquent tax-payer at no time held an enforcible claim against his alleged debtor. It is settled, however, that once the tax lien has been perfected it may not be displaced by operation of state law (*Michigan* v. *United States*, 317 U.S. 338, 340 [63 S.Ct. 302, 87 L.Ed. 312]; *United States* v. *City of New Britain*, 347 U.S. 81, 84 [74 S.Ct. 367, 98 L.Ed. 520]; *United States* v. *Snyder*, 149 U.S. 210, 214 [13 S.Ct. 846, 37 L.Ed. 705]) and that the interests of the United States may not be prejudiced by the assertion of subsequently acquired rights of third parties against the tax delinquent. (*United States* v. *Security Trust & Sav. Bank*, 340 U.S. 47, 50-53 [71 S.Ct. 111, 95 L.Ed. 53]; *Glass City Bank* v. *United States*, 326 U.S. 265, 267-268 [66 S.Ct. 108, 90 L.Ed. 56]; *United States* v. *City of Greenville*, 118 F.2d 963, 965; *Miller* v. *Bank of America*, 166 F.2d 415, 417; *Citizens State Bank of Barstow* v. *Vidal*, 114 F.2d 380, 383-384; *In re Dartmont Coal Co.*, 46 F.2d 455, 457; *United States* v. *Graham*, 96 F.Supp. 318, 321, affirmed, 195 F.2d 530; *United States* v. *Rosenfield*, 26 F.Supp. 433, 436.)

The fact that the Goldbergs did not have actual knowledge of the tax liens when they purchased the claims against Lair does not render the enforcement of the tax liens against them inequitable. The Goldbergs' indebtedness to Lair was an asset that the United States was entitled to levy upon for the payment of taxes due. As noted above, the Goldbergs did not pay the judgment in ignorance of the tax liens but instead

purchased claims against Lair. That the value of these claims was problematical was apparent from the fact that Lair's creditors were willing to sell them for approximately one third of their face value and the Goldbergs could easily have determined from an examination of the records that they were subordinate to the tax liens. Under these circumstances it cannot reasonably be said that the United States attempted to prejudice the Goldbergs' position toward their creditor by asserting its tax liens. Instead, because they failed to investigate the sources of information available to them, the Goldbergs have been permitted to succeed in defeating the enforcement of the tax liens by advancing claims that were subordinate to them.

Gibson, C. J., concurred.