[Civ. No. 14826. Third Dist. Dec. 23, 1975.]

DONALD R. BALES, Plaintiff, Cross-defendant and Appellant, v.
ROY HENDERSON et al., Defendants,
Cross-defendants and Respondents;
STAIGER CONSTRUCTION COMPANY,
Defendant, Cross-complainant and Respondent.

**COUNSEL**

Gualco, Hummel & Quirk, Gualco, Hummel & Kirby and Reynold J. Gualco for Plaintiff, Cross-defendant and Appellant.

Bowers, Sinclair, Schiess & Mitchell for Defendant, Cross-complainant and Respondent.

Dwayne Keyes, United States Attorney, Richard W. Nichols, Assistant United States Attorney, Scott P. Crampton, and Diepenbrock, Wulff, Plant & Hannegan for Defendants, Cross-defendants and Respondents.

**OPINION**

**PARAS, J.**—Appellant Donald R. Bales appeals from a judgment of the Superior Court of Sacramento County awarding the United States Internal Revenue Service $6,024.40 from Staiger Construction Company, a corporation, which Bales claims should have been ordered paid to him instead.

Taxpayer Roy Henderson conducted a business under the name and style of Alpha Omega Drywall. Bales conducted a business under the name and style of Donald R. Bales Custom Painting Service. At various times prior to August 1971, Bales and Henderson had worked together on various construction contracts, as a result of which Henderson was indebted to Bales in an undisclosed amount.

On or about August 16, 1971, Henderson entered into a contract with Staiger by which Henderson was to perform certain work as subcontractor for Staiger on Staiger's contract with the Church of Jesus Christ of Latter Day Saints, on a project located in Lincoln, California. The total contract price payable to Henderson on this subcontract was $7,300.

On October 13, 1971, the United States Internal Revenue Service made an assessment against Henderson for unpaid social security and withholding taxes for the period ending June 30, 1971. A notice of federal tax lien relating to this assessment was recorded in the official records of Sacramento County (Henderson's place of residence) on November 2, 1971. As of the date of trial, July 10, 1973, the balance due and owing on this assessment was $5,085.41. On December 24, 1971, the United States Internal Revenue Service made another assessment against Henderson for unpaid social security and withholding taxes for the period ending September 30, 1971. A notice of federal tax lien relating to this assessment was recorded in the official records of Sacramento County on January 11, 1972. As of the date of trial, the balance due and owing on this assessment was $2,075.60.

On or about December 15, 1971, after the first tax lien above-mentioned was filed against Henderson, Henderson entered into an oral agreement with Bales which was in the nature of a joinder of Bales into Henderson's contract with Staiger, and amounted to an assignment from Henderson to Bales of any money which was or would become due from Staiger to Henderson. Staiger was not a party to and did not participate in the assignment, but maintained its contractual relationship exclusively with Henderson.

During January 1972, the above oral agreement between Bales and Henderson was rescinded by Bales; the precise nature of the rescission and reason for it are not explained. But after the second tax lien above-mentioned, sometime in February or March 1972, Bales and Henderson entered into another oral agreement similar to their December 1971 agreement. Pursuant to this February or March agreement, Bales performed some work on the church job, the nature and extent of which is not indicated, which work was completed about the end of March 1972. As a result of the combination of Bales' work on this job, and their prior association above-mentioned, Henderson's indebtedness to Bales reached the total amount of $8,267.02. No specific breakdown between the two sources of the indebtedness was offered. Later Staiger determined that additional work was necessary to render the work on the

subcontract satisfactory, and for that purpose expended and set off the sum of $1,275.60, leaving a contract balance due and owing on the subcontract of $6,024.40.

The trial court determined that the claim of the United States, by virtue of its liens filed against Henderson, had priority over Bales' claim, and entered judgment in favor of the United States for the full amount of the funds ($6,024.40) held by Staiger.

Section 6321 of the Internal Revenue Code of 1954 imposes a federal tax lien in favor of the United States for the amount of unpaid taxes assessed against a taxpayer. The lien attaches to "all property and rights to property, whether real or personal, belonging to such [taxpayer]." The lien imposed by section 6321 continues in force under section 6322 "until the liability for the amount so assessed . . . is satisfied or becomes unenforceable by reason of lapse of time." ■ A debt owed to an individual is a property interest in the creditor (*Nanny* v. *H. E. Pogue Distillery Co.* (1943) 56 Cal.App.2d 817 [133 P.2d 686]) to which a federal tax lien attaches. (*Highsmith* v. *Lair* (1955) 44 Cal.2d 298, 302 [281 P.2d 865]; *United States* v. *Graham* (S.D.Cal. 1951) 96 F.Supp. 318, 320, affd. per curiam sub nom. *California* v. *United States* (9th Cir. 1951) 195 F.2d 530 cert. den. (1952) 344 U.S. 831 [97 L.Ed. 647, 73 S.Ct. 36].)

Bales does not have, and does not claim to have, any priority position that would outrank the filed and perfected tax liens of the United States. He contends only that the contract proceeds never constituted Henderson's property or right to property, because the monies were not actually due and payable until March 1972, long after the tax liens attached.

The trial court made an express finding of fact that pursuant to the subcontract, "Staiger owed to Henderson the sum of $6,024.40 on and continuously from and after November 2, 1971." This finding was based upon substantial evidence, consisting of interrogatories propounded by the United States and answered by the president of Staiger Construction Company, John Tanner, on July 5, 1973.[1] The trial judge included in the settled statement the fact that the $6,024.40 was "due and owing from Staiger to Henderson . . . on November 2, 1971," despite efforts of Bales' counsel to prevent such inclusion.

[1]The same answer, $6,024.40, was given in response to four questions asking "what amounts, if any, were due and owing from Staiger Construction Company to Roy Henderson" on four different dates: November 2, 1971, December 15, 1971, January 11, 1972, and May 10, 1972.

As was stated in *Burns* v. *Brown* (1946) 27 Cal.2d 631, 636 [166 P.2d 1, 4]: "When appellant cannot or does not want to avail himself of this method of preparing the record on appeal [reporter's transcript], either because a reporter was not present at the proceedings or for other reasons, and when he fails to convince the trial judge that his statement accurately reflects the proceedings in question, the action of the trial judge, who heard and tried the case, must be regarded as final. His familiarity with the trial and knowledge of what took place there make him uniquely qualified to determine what the evidence was and whether it has been correctly stated."

On the other hand, the settled statement unequivocally indicates that Bales performed work on the contract in February or March 1972. The contract being executory and containing mutually dependent obligations (to perform the work and to pay for it), with work yet to be done (and in fact done) after November 2, 1971, it is impossible that *all* of the contract price ($7,300 less the $1;275.60 back charge) was actually due and owing by Staiger on that date. There is thus an irreconcilable conflict in the settled statement in this respect, which cannot be resolved in favor of the United States, despite the rule of *Burns* v. *Brown, supra.*

Nor may the conflict be resolved in favor of Bales, as contended by him. He maintains that *all* of the work necessary to make the total contract price due and payable was performed by him, and thus he is entitled to the entire sum. The settled statement does not permit such a result because it is strongly susceptible of the interpretation that some of the work on the contract was performed by Henderson before the assignment and before the lien dates.

The correct rule to apply in this case is that the "asset" of Henderson to which the tax lien attached is the contract price less the actual cost of making it due and payable. Thus if Henderson had done no work whatever on the contract as of the lien dates, and if his assignment to Bales contemplated receipt by Henderson of no funds or other benefit (e.g., the reduction or elimination of a preexisting indebtedness), and further if Henderson was not entitled to anything as consideration for the assignment (a finders' fee, e.g.) which he in effect gave to Bales, then Henderson possessed no asset to which the lien attached; stated another way, the cost to Henderson of causing the contract price to become due was 100 percent thereof. To the extent, however, that Henderson had already performed work on the contract which ultimately generated the payment of a part of the contract price, or was otherwise entitled to a

share thereof, or that Henderson received any quid pro quo from Bales for the assignment, there existed *prò tanto* an asset to which the liens attached, which asset could not be simply transferred to Bales in derogation thereof. (See *U.S.* v. *Durham Lumber Co.,* 363 U.S. 522 [4 L.Ed.2d 1371, 80 S.Ct. 1282]; *In re Halprin,* 280 F.2d 407; *Randall* v. *Colby* (N.D.Iowa 1961) 190 F.Supp. 319; *New York Casualty Co.* v. *Zwerner,* 58 F.Supp. 473; 36 N.Y.U. L.Rev. 601.) An appropriate determination of these matters was not made by the trial court and should be made on retrial.

The judgment is reversed.

Friedman, Acting P. J., and Evans, J., concurred.