## UNITED STATES v. WINNETT.
### No. 11492.

Circuit Court of Appeals, Ninth Circuit.
Dec. 15, 1947.

150

Theron L. Caudle, Asst. Atty. Gen., Sewall Key, A F. Prescott, Courtnay C. Hamilton, and Fred E. Youngman, Sp. Assts. to Atty. Gen., and James M. Carter, U. S. Atty., E. H. Mitchell, Asst. U. S. Atty., and Eugene Harpole, Sp. Atty., Bureau of Internal Revenue, all of Los Angeles, Cal., for appellant.

MacFarlane, Schaefer & Haun and Dempsey, Thayer, Deibert & Kumler, all of Los Angeles, Cal., for appellee.

Before MATHEWS, STEPHENS, and ORR, Circuit Judges.

ORR, Circuit Judge.

Appellee Winnett borrowed money from one Summers[1] and executed a note therefor in the sum of $60,000. Later, Summers borrowed money from a bank, executed notes and Winnett endorsed them with the understanding, both oral and written, that in the event Summers defaulted in any or all of the payments to become due on her notes, and Winnett was called upon to make payment, the amount so paid by him could be set off against any amounts due or to become due on the $60,000 note. This agreement was reduced to writing on May 26, 1938, and on the same day an endorsement was made on said $60,000 note making it subject to the agreement.

On May 17, 1939 Winnett was notified that Summers had defaulted on her notes to the extent of $27,233.66. Winnett paid said sum to the bank and the notes were endorsed over to him.

On February 16, 1939 the Collector of Internal Revenue received an assessment list containing an assessment against Summers. Notices of federal tax lien were filed the following day. On March 22, 1939 the Collector served upon appellee a notice of levy on all property in his possession belonging to Summers. It will be noted that the payment to the bank by Winnett of the amounts by which Summers had defaulted was subsequent to the lien of the United States resulting from the levy made by the Collector.

[1] The name of J. M. Woods appears in the different transactions but it is conceded Woods and Summers are one and the same person. In this opinion we will refer to Summers only.

The District Court found that on January 1, 1939 Summers was insolvent; that on February 17, 1939 the United States had a valid and subsisting lien on the property of Summers; that said lien was enforceable against Winnett only as to the unpaid balance on the $60,000 note after deducting the amount of the claimed off-sets. The District Court found the sum of $6,466.64 plus interest due the United States, this being the value of the property or property rights which Summers could have enforced against Winnett.

■ Appellant's main contentions are: That since Winnett's right to offset was a contingent right on February 16, 1939, the date of the lien secured by the United States, and since no offset had been made or could be made on that date, its tax lien attached to the entire unpaid balance of the $60,000 note, and that apart from its lien the United States had a priority in the property of Summers upon her insolvency under § 3466, R.S., 31 U.S.C.A. § 191, and that this priority precluded any subsequent offset.[2] We do not agree. Summers' interest in the $60,000 note had been subjected, by oral contract, as early as the year 1935, to Winnett's contingent right of set-off and his interest was made the subject of written agreement and endorsement upon the note on May 26, 1938. These writings served as a notice of the limitation of Summers' interest in the note to all who might subsequently take the note, either as purchaser for value or for a pre-existing debt. One choosing to reach this chose-in-action belonging to Summers by attachment or garnishment could acquire no greater right against Winnett than that possessed by Summers.[3] This would hold true even though the sovercign initiated the proceed-ing. Under §§ 3672 and 3710(a) of the Internal Revenue Code, 26 U.S.C.A.Int.Rev. Code, §§ 3672, 3710(a), the rights of the Collector do not extend beyond those of the taxpayer whose right to property is sought to be levied upon.[4] Winnett had a right of set-off of the amount he was contingently liable for as an endorser of the Summers notes in 1935 prior to the United States asserted lien and priority and the Government is legally required to recognize that right.

■ The determination of what constituted the property of Summers on February 16, 1939, the date of the asserted lien and priority of the United States, is primarily a matter of state law.[5] Because of the insolvency of Summers on January 1, 1939, the equitable right of set-off accrued to Winnett on that date, under the laws of the state of California[6] notwithstanding his claim was then based upon a contingent obligation; furthermore, his equitable right to set-off related back to the date of agreement for set-off, which was prior to the lien of the United States.[7] "Indeed, natural justice would seem to require that where the transaction is such as to raise the presumption of an agreement for a set-off, it should be held that the equity that this should be done is superior to any subsequent equity not arising out of a purchase for value without notice."[8] This is so in the face of a claim of the United States based on §§ 3710(a) and 3672 of the Internal Revenue Code, or § 3466 of the Revised Statutes. The Collector can reach nothing that Summers could not have reached. The equities in this case are clearly with Winnett. He should not be required to pay the same debt twice even though the interposition here is by the sovereign.

[2] § 3710 (a), Int.Rev.Code, 26 U.S.C.A. Int.Rev.Code, § 3710 (a):

"(a) Requirement. Any person in possession of property, or rights to property, subject to distraint, upon which a levy has been made, shall, upon demand by the collector or deputy collector making such levy, surrender such property or rights to such collector or deputy, unless such property or right is, at the time of such demand, subject to an attachment or execution under any judicial process."

[3] United States v. Bank of U. S., D.C., 5 F.Supp. 942.

[4] Karno-Smith Co. v. Maloney, 3 Cir., 112 F.2d 690, 692.

[5] United States v. Malcolm. 282 U.S. 792, 51 S.Ct. 184, 75 L.Ed. 714.

[6] Harrison v. Adams, 20 Cal.2d 646, 128 P.2d 9; Gordon v. Foote, 120 Cal.App. 76, 7 P.2d 709.

[7] In re Van Winkle, D.C., 49 F.Supp. 711.

[8] Scott v. Armstrong, 146 U.S. 499, 508, 13 S.Ct. 148, 151, 36 L.Ed. 1059.

The United States further contends that Summers, in loaning to Winnett, on December 20, 1935, an additional $40,000 and receiving in return therefor the $60,000 note (which included $20,000 then owed by Winnett to Summers) committed an act of bankruptcy. There is no finding that Summers was insolvent on May 26, 1938 or on August 26, 1938, the dates the written agreements were executed. These do not constitute a preference as they appear to have been given in the ordinary course of business and we find no basis for the contention that by the said transactions Winnett was created a trustee for the United States.

Judgment affirmed.