**BANK OF NEVADA, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 15541.**

United States Court of Appeals
Ninth Circuit.

Dec. 31, 1957.

Rehearing Denied Feb. 7, 1958.

Milton W. Keefer, B. Mahlon Brown, Las Vegas, Nev., for appellant.

Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, Charles B. E. Freeman, A. F. Prescott, Sheldon I. Fink, Attys., Dept. of Justice, Washington, D. C., Franklin P. R. Rittenhouse, U. S. Atty., Las Vegas, Nev., for appellee.

Before STEPHENS, Chief Judge, and LEMMON and HAMLEY, Circuit Judges.

LEMMON, Circuit Judge.

While the Internal Revenue Code of 1954 "contains a variety of important changes in the estate and gift tax areas",[1] it has left untouched the well established principle that the amount of an unpaid tax "shall be a lien in favor of the United States upon all property and rights to property"[2] of the delinquent taxpayer.

No government worthy of the name will permit itself to be rendered incapable of collecting the public fisc.

At any rate, in this respect at least, the United States Government has not been left impotent.

### 1. Statement of Facts

The facts as found by the Court below were entirely stipulated. They may be summarized as follows—with especial regard to the chronology, since time-sequence is important here:

On November 15, 1954, certain Withholding and Federal Insurance Contributions Act taxes for the calendar year 1954 in the amount of $804.50 were assessed against J. D. Bentley of Las Vegas, Nevada, hereinafter referred to as the taxpayer. On the following day, the taxpayer was notified of this assessment and demand was made upon him to pay it, but he has refused to do so.

On January 12, 1955, a notice of tax lien pertaining to this assessment was filed with the County Recorder of Clark County, Nevada.

On February 28, 1955, and on August 31, 1954, the taxpayer submitted financial statements to the appellant. Each statement read in part as follows:

"The undersigned, for the purpose of procuring and establishing credit from time to time with you and to induce you to permit the undersigned to become indebted to you on notes, endorsements, guarantees, overdrafts or otherwise, furnishes the following as being a true and correct statement of the financial condition of the undersigned on the above date, and agrees to notify you immediately of the extent and character of any material change in said financial condition, and also agrees that if the undersigned, or any endorser or guarantor of any of the obligations of the undersigned, at any time fails

---

1. "Revision of the Federal Estate and Gift Taxes: The Internal Revenue Act of 1954", by Marvin Chirelstein and Benjamin M. Shieber, Stanford Law Review, December, 1954, Volume 7, Number 1, page 40.

2. Internal Revenue Code of 1954, § 6321, 26 U.S.C.A. §§ 6321, infra.

in business or becomes insolvent, or commits an act of bankruptcy, or if any deposit account of the undersigned with you, or any other property of the undersigned held by you, be attempted to be obtained or held by writ of execution, garnishment, attachment or other legal process, or if any of the representations made below prove to be untrue, or if the undersigned fails to notify you of any material change as above agreed, then and in such case, *at your option,* all of the obligations of the undersigned to you, or held by you, shall immediately become due and payable, without demand or notice. This statement shall be construed by you to be a continuing statement of the condition of the undersigned, and a new and original statement of all assets and liabilities upon each and every transaction in and by which the undersigned hereafter becomes indebted to you, until the undersigned advises in writing to the contrary." [Emphasis supplied.]

On March 1, 1955, certain Federal excise taxes for the calendar year 1954 amounting to $187.51 were assessed against the taxpayer, and on that same date the taxpayer was notified of this assessment. Demand was made upon him to pay it, but he has refused to do so.

On April 16, 1955, the taxpayer and his wife, Doris L. Bentley, borrowed $2,000 from the appellant and executed a promissory note in favor of the appellant for that amount.

On May 31, 1955, the taxpayer submitted to the appellant another financial statement, containing the same provision relating to the appellant's right of setoff that has been quoted supra.

On June 10, 1955, the taxpayer had on deposit in an account with the appellant "the sum of not less than $878.16". At 1:45 p. m. on that day, the appellee, through one of its collection officers, served a "Notice of Levy" upon the appellant by delivering it to E. K. Phillips, the assistant cashier. This Notice of Levy covered both of the assessments referred to above.

On that same day, A. M. Smith, vice president and manager of the appellant's First and Fremont Branch, wrote to the appellee's collection officer as follows:

"This will acknowledge receipt of your Notice of Levy against J. D. Bentley, which was served on our Mr. Phillips at 1:45 p. m. today.

"I would like to take this opportunity to inform you that we have exercised our right to setoff and applied the funds in this account to an unsecured indebtedness held at this bank; consequently, there are no funds available under your levy."

The "unsecured indebtedness" referred to in the above letter was the balance of the note for $2,000, referred to above, which balance, at the time of the levy, amounted to approximately $1,500. The appellant exercised its "claimed" right of setoff *subsequently* to 1:45 p. m. on June 10, 1955, the precise time at which the appellee's collection officer delivered the Notice of Levy to the appellant's assistant cashier. The appellant concedes that it exercised its right of setoff "thereafter".

On June 13, 1955, a notice of Federal tax lien pertaining to the assessment of Federal excise taxes was filed in the office of the County Recorder of Clark County, Nevada.

On June 14, 1955, the appellee's collection officer served a final demand upon the appellant's vice president and manager of its First and Fremont Branch.

On September 28, 1955, the appellee filed suit in the Court below to recover from the appellant the sum of $878.16, with interest and costs. As we have seen, that sum represented the amount which the taxpayer had on deposit with the appellant on June 10, 1955.

The case was submitted upon a stipulation of facts, together with attached exhibits.

The District Court held that the appellee's "tax liens are paramount and valid liens", and that the appellee was entitled to judgment as prayed for.

On March 29, 1957, the District Court handed down a judgment accordingly.

On April 5, 1957, the Notice of Appeal was filed.

### 2. The Appellant's Contentions

The appellant's argument may be summarized as follows:

The trial court erred in "ignoring the established principle that the bank has a general lien or right of setoff against the deposits of the depositor for the indebtedness of the depositor to the bank".

The Court erred in finding that the promissory note was not a demand note and due immediately upon delivery.

There was no property of the depositor-taxpayer in the possession of the appellant subject to the tax lien.

The right of set-off in the appellant was paramount to the appellee's tax lien.

### 3. The Applicable Statute

The pertinent sections of the Internal Revenue Code of 1954 are the following:

"§ 6321. Lien for taxes

"If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

"§ 6322. Period of Lien

"Unless another date is specifically fixed by law, the lien imposed by section 6321 shall arise at the time the assessment is made and shall continue until the liability for the amount so assessed is satisfied or becomes unenforceable by reason of lapse of time.

"§ 6323. Validity against mortgagees, pledgees, purchasers, and judgment creditors

"(a) Invalidity of lien without notice.—

"Except as otherwise provided in subsection (c), the lien imposed by subsection (c), the lien imposed by section 6321 shall not be valid as against any mortgagee, pledgee, purchaser, or judgment creditor until notice thereof has been filed by the Secretary [of the Treasury] or his delegate—* * *

"§ 6331. Levy and distraint

"(a) Authority of Secretary or delegate.—

"If any person liable to pay any tax neglects or refuses to pay the same within 10 days after notice and demand, it shall be lawful for the Secretary or his delegate to collect such tax (and such further sum as shall be sufficient to cover the expenses of the levy) by levy upon all property and rights to property (except such property as is exempt under section 6334) belonging to such person or on which there is a lien provided in this chapter for the payment of such tax. * * *

"§ 6332. Surrender of property subject to levy

"(a) Requirement.—Any person in possession of (or obligated with respect to) property or rights to property subject to levy upon which a levy has been made shall, upon demand of the Secretary or his delegate, surrender such property or rights (or discharge such obligation) to the Secretary or his delegate, except such part of the property or rights as is, at the time of such demand, subject to an attachment or execution under any judicial process."

### 4. Liens for Federal Taxes and the Provisions for Their Collection Are Strictly Federal and Strictly Statutory

At the outset, what appears to be a basic misconception of the appellant should be cleared up. In its main brief, the appellant cites a number of state decisions to the effect, inter alia, that a party in the appellant's position "has a general lien or right of set off against the deposits of the depositor for the indebtedness of the depositor to the bank"; and that there is a right to set

off enjoyed by a bank "by virtue of a specific agreement with its depositor", and that only the sum left, "after deducting the debits from the credits, in favor of the depositor was the balance or property *subject to the tax lien.*" [Emphasis supplied]

The Supreme Court has repeatedly and emphatically stated that Federal tax liens and the provisions for their collection are strictly *Federal* and strictly *statutory.* Those provisions are unaffected by any alleged "general rule" that a bank has a "general lien" upon deposits.

In United States v. Security Trust & Savings Bank, 1950, 340 U.S. 47, 49–50, 71 S.Ct. 111, 113, 95 L.Ed. 53, the Court said:

> "The effect of a lien in relation to a provision of federal law for the collection of debts owing the United States is *always* a federal question. Hence, although a state court's classification of a lien as specific and perfected is entitled to weight, it is subject to reexamination by this Court." [Emphasis supplied.]

Again, in United States v. Acri, 1955, 348 U.S. 211, 213, 75 S.Ct. 239, 241, 99 L.Ed. 264, the Supreme Court used the following language:

> "The relative priority of the lien of the United States for unpaid taxes is, as we said in United States v. Waddill, Holland & Flinn Co., 323 U.S. 353, 356, 357, 65 S.Ct. 304, 306, 89 L.Ed. 294; People of State of Illinois v. Campbell, 329 U.S. 362, 371, 67 S.Ct. 340, 345, 91 L.Ed. 348; United States v. Security Trust & Savings Bank of San Diego, 340 U.S. 47, 49, 71 S.Ct. 111, 112, 95 L.Ed. 53, always a federal question to be determined finally by the federal courts. The state's characterization of its liens, while good for all state purposes, does not necessarily bind this Court. [Cases cited.]"

This Court likewise has adhered to the Federal norm in evaluating a Federal tax lien. In MacKenzie v. United States, 9 Cir., 1940, 109 F.2d 540, 541, Judge Stephens said:

> "The federal tax lien is entirely statutory, therefore its scope and effect are to be determined solely by the statute and the decisions interpreting it." [3]

5. *The Appellant Could Not Shield the Taxpayer's Account By an Inchoate Agreement with Its Depositor or by a Claimed Equitable Right of Setoff Springing From a Debt Not In Existence When the Tax Liens Arose*

Section 6332(a), supra, gives the appellant only two defenses; namely, (1) that it was not in possession of property of the taxpayer which was subject to levy; or (2) that the property was subject to a prior judicial attachment or execution. The statute admits of no other defenses.[4]

In the instant case, of course, judicial attachment or execution does not figure. The appellant does maintain, however, that it did not have in its possession "property rights [sic] to property subject to levy" at the time of demand or levy by the District Director of Internal Revenue on June 10, 1955.

This is based upon the further contention that the appellant had a "right of set off" bottomed upon the agreement of August 31, 1954, and "the demand note" of April 16, 1955, supra. It is argued that by virtue of the agreement of August 31, 1954, which "prior to the assessment of taxes against the taxpayer on November 15, 1954 [supra], or the recording of the notice of tax lien on January 12, 1955 [supra]," the appellant has acquired "a right of set off by contract which was paramount to the subsequent tax lien." Finally, it is urged that "there existed no balance in the depositor-taxpayer's account which was sub-

---

3. See also United States v. Scovil, 1955, 348 U.S. 218, 220, 75 S.Ct. 244, 99 L.Ed. 271.

4. See United States v. Manufacturers Trust Co., 2 Cir., 1952, 198 F.2d 366, 369; United States v. Third Nat. Bank & Trust Co., D.C.Pa., 1953, 111 F.Supp. 152, 156.

ject to levy by the District Director of Internal Revenue".

We do not agree. The appellant could not protect itself from a Federal tax levy by the taxpayer's inchoate agreement, or by an asserted right of setoff arising from a debt that was not in existence at the time the tax liens arose, supra. The liens came into being at the time the assessments were made. See § 6322, supra.

In United States v. Graham, D.C.Cal. 1951, 96 F.Supp. 318, 321, affirmed per curiam sub nom. State of California v. United States, 9 Cir., 1952, 195 F.2d 530, certiorari denied 1952, 344 U.S. 831, 73 S.Ct. 36, 97 L.Ed. 647, the District Judge said:

> "The 1942 income tax assessment against the taxpayer, Warren C. Graham, was received by the Collector on March 23, 1945, more than a year and three months *before* the leases with the State of California were entered into. The tax due under this assessment is still due. Any money that accrued to the taxpayer under the lease with the state *accrued with a lien impressed upon it. There was no period of time in which the State of California's right of set-off could have been asserted against the debt to the taxpayer that the property was not impressed with the tax lien.* In United States v. Winnett, supra [9 Cir., 165 F.2d 149], the right of set-off accrued *before* any tax liens arose.

> \* \* \* \* \* \*

> "Assuming arguendo that the State of California may assert an equitable set-off against a delinquent taxpayer, the set-off could have been asserted *no earlier than the time at which the lease agreements were entered into with the taxpayer. No set-off could arise until such time as there existed something to be set-off against.* But the rights of the taxpayer under the lease were born with *the tax lien impressed thereon.*

> "Assuming further that the set-off and the tax liens attached simultaneously to the interest of the taxpayer created by the lease agreements, no citation of authority is needed to establish that *the federal tax lien is superior to any simultaneously attaching interest of the State of California.* Therefore the rights of the defendant, State of California, with respect to the money accrued as rentals under the leases made with the taxpayer are inferior to the tax liens of the United States." [Emphasis supplied.]

It should be noted here that this Court affirmed the District Court's judgment in the Graham case, supra, "On the ground and for the reasons stated" in the District Judge's opinion. We adhere to the teaching of Graham.

"The first in time is the first in right" was declared to be the determining principle by Mr. Justice Minton, in United States v. City of New Britain, 1954, 347 U.S. 81, 85–86, 74 S.Ct. 367, 370, 98 L.Ed. 520.

In that case, the Court quoted the following language of Mr. Chief Justice Marshall in Rankin & Schatzell v. Scott, 12 Wheat. 177, 179, 25 U.S. 177, 179, 6 L.Ed. 592:

> "The principle is believed to be universal, that a prior lien gives a prior claim, which is entitled to prior satisfaction out of the subject it binds, unless the lien be intrinsically defective, or be displaced by some act of the party holding it, which shall postpone him in a Court of law or equity to a subsequent claimant."

In its opinion in the New Britain case, supra, the Supreme Court continued:

> "This principle is widely accepted and applied, in the absence of legislation to the contrary. 33 Am.Jur., Liens, § 33; 53 C.J.S. Liens § 10b. We think that Congress had this cardinal rule in mind when it enacted § 3670 [the predecessor of § 6321, supra], a schedule of priority not

being set forth therein. Thus, the priority of each statutory lien contested here must depend on the time it attached to the property in question and became *choate*." [Emphasis supplied.]

An examination of the lengthy paragraph quoted supra from the financial statements of August 31, 1954, February 28, 1955, and May 31, 1955 will convince even the casual reader of the record that whatever lien the appellant had upon the taxpayer's deposit on those dates was *inchoate* in the extreme!

The doctrine of "relation back" cannot avail the appellant here. In the Security Trust case, supra, 340 U.S. at pages 50–51, 71 S.Ct. at page 113, the Court used language quite apposite here:

"Nor can the doctrine of relation back—which by process of judicial reasoning merges the attachment lien in the judgment and relates the judgment lien back to the date of attachment—operate to destroy the realities of the situation. When the tax liens of the United States were recorded, Morrison did not have a judgment lien. He had a mere '*caveat* of a more perfect lien to come'. * * *

* * * * * *

" * * * Accordingly, we hold that the tax liens of the United States are superior to the *inchoate* attachment lien of Morrison, * * *" [Emphasis supplied.]

■ Finally, the Court in United States v. Kings County Iron Works, 2 Cir., 1955, 224 F.2d 232, 237, tersely summarized the rule that is applicable here:

"The mere attachment of the government's [tax] lien gives it a fully perfected claim superior to all except mortgagees, pledgees, purchasers, or judgment creditors of the taxpayer."

No amount of legalistic sophistry can erode the Gibraltar of that rule.

6. *The Appellant's Inchoate Right of Setoff Cannot Override the Appellee's Choate Tax Levy*

The appellant insists that there is a "general" rule that "a bank has a general lien upon or right of set off against all monies or funds in its possession belonging to a depositor to secure the payment of a depositor's indebtedness to it". It specifies as error the District Court's "finding that the federal tax liens upon all property and rights to property belonging to the taxpayer arose prior to the loan of April 16, 1955, and prior to any right of set off on the part of the [appellant]".

The record does not show that the taxpayer was indebted to the appellant at the time the agreement of August 31, 1954 was executed. The record does show, however, that the debt which the appellant is attempting to set off did not arise until April 16, 1955, *after* the tax liens of November 15, 1954, and March 1, 1955 came into existence. These two latter dates are the assessment dates, and, as we have seen, under § 6322 "Unless another date is specifically fixed by law, the lien imposed by section 6321 shall arise at the time the assessment is made".

We have also seen that the identical agreements of August 31, 1954, February 28, 1955, and May 31, 1955, specified the following contingencies that would give rise to the appellant's right to exercise its option of set off.

(a) If the taxpayer failed in business or became insolvent;

(b) If the taxpayer's deposit account or any other property of the taxpayer held by the appellant was the subject of an attempt to be obtained or held by writ of execution, garnishment, attachment or other legal process;

(c) If the taxpayer failed to notify the appellant of any material change in the taxpayer's financial condition; and

(d) If any of the taxpayer's representations proved to be untrue.

It is clear that the only fact which gave the appellant the option to set off was the appellee's demand and levy; but that demand and that levy admittedly took place *prior* to the alleged exercise of the appellant's option.

Under the present facts and under the authorities already referred to, the appellant cannot avail itself of finespun "general" theories dealing with a bank's "general" lien or "right" of setoff. The Federal tax collector is not to be frustrated in this way.

7. *In the Absence of a Demand, the Taxpayer's Note Was Not intended To Be Payable until August 14, 1955*

■ So far we have assumed that the taxpayer's note was a true demand note, due and payable on the date of its face, April 16, 1955. The due date specified in the instrument itself, however, read as follows:

"On Demand; if no demand is made then on August 14th, 1955. \* \* \*"

No demand was made by the appellant; but, as we have seen, on June 10, 1955, the appellant's officer, announced, *after* the notice of levy was received by the bank, that the bank had exercised its right of setoff, etc.

In the absence of demand, a note of the type that we are here considering falls due on the alternative date specified.

In Sullivan v. Ellis, 8 Cir., 1915, 219 F. 694, 696, the Court said:

"The general rule with regard to commercial paper, payable on demand, is that it becomes due immediately, and that the statute of limitations begins to run from its date.

" 'This rule may not apply where there is something on the paper, or in the circumstances under which it is given, showing that it was not the intention that it should become due immediately.' 7 Cyc. 848, 849."

In 10 C.J.S. Bills and Notes § 247 b, page 744, we find the rule correctly stated:

" \* \* \* Although the maker of a demand note is not in default until he refuses payment until after demand therefor, it is generally held that a note payable on demand is due immediately, so that suit may be maintained on it at any time after

delivery without any other demand than the suit. *This rule may not apply, however, when there is something on the paper,* or in the circumstances under which it was given, to show that it was not the intention that it should become due immediately, \* \* \*" [Emphasis supplied.]

In the instant case, there assuredly was "something on the paper \* \* \* to show that it was not the intention that it should become due immediately", in the absence of a demand. No demand was made.

■ But even if we assume, for the sake of the argument, that the commercial paper was a true demand note and therefore became due on the date of its execution and delivery—April 16, 1955— even at *that* early date, the appellee's tax liens had already attached. We have seen that on January 12, 1955, a notice of tax lien pertaining to the November 15, 1954, assessment of withholding and insurance contributions taxes was filed with the County Recorder; and on March 1, 1955, certain excise taxes for 1954 were assessed against the taxpayer, who, after notice and demand, had refused to make payment.

Accordingly, according to whatever theory we consider the appellant's rights under the taxpayer's note of April 16, 1955, those rights are *junior* to the appellee's tax liens.

Furthermore, regardless of dates, the mere fact that the note might be due does not mean that an equitable right of setoff necessarily exists.

In American Surety Co. v. City of Akron, 6 Cir., 1938, 95 F.2d 966, 970, the Court noted the subordinate position of setoff:

"However, this right of equitable set-off is not absolute or paramount to the superior equities of other claimants. [Case cited.] Cf. Gray v. School District, 3 Cir., 67 F.2d 141, 143, which pointed out that the right of equitable set-off could be enforced only where no equity of third persons will be injured."

In the instant case, we are not even faced with the problem of balancing equities. We are asked to balance an inapplicable equitable principle against the plain mandate of a tax statute. "Equity follows the law."

The appellant relies heavily upon our decision in United States v. Winnett, 9 Cir., 1947, 165 F.2d 149, 151. That case, however, is readily distinguishable on the facts. There, *before* the tax liens attached, Winnett endorsed the taxpayer's notes, with the understanding, both oral and written, that in the event the taxpayer defaulted in any or all of the payments, and Winnett was called upon to make good, the amount so paid by Winnett could be set off against any amounts due or to become due on a note previously executed by Winnett in favor of the taxpayer Summers.

Furthermore, also *before* the tax liens attached, the taxpayer became insolvent. Here, of course, no insolvency is involved.

That the taxpayer's *insolvency* was the primary, though not the sole, basis for this Court's holding that the tax lien "was enforceable against Winnett only as to the unpaid balance of the $60,000 note after deducting the amount of the claimed off-sets", is evident from the following language of the Winnett opinion:

"Because of the insolvency of Summers [the taxpayer] on January 1, 1939, the equitable right of set-off accrued to Winnett on that date, under the laws of the state of California notwithstanding his claim was then based upon a contingent obligation; furthermore, his equitable right to set-off related back to the date of agreement for set-off, which was prior to the lien of the United States."

The appellant also relies upon Winnett for the proposition "that the rights of the [appellee] do not extend beyond those of the taxpayer whose right to property is sought to be levied upon". If we assume this proposition to be correct, it should be pointed out that on the dates of levy and demand or of recordation— November 16, 1954, January 12, 1955, and March 1, 1955, and June 10, 1955,— the taxpayer had full right to use his bank account, and, indeed, did continue to use it thereafter.

It will be observed that in the above excerpt from Winnett, our Court stated that Winnett's "equitable right to set-off related back to the date of agreement for set-off, which was prior to the lien of the United States". The Supreme Court of the United States, however, in the Security Trust case, supra, which was decided nearly three years after Winnett, frowned, as we have seen, upon the doctrine of "relation back"—at least when that doctrine was invoked to frustrate the sovereign in the collection of its fisc.

Finally, in the Winnett case, this Court observed that Winnett "should not 'be required to pay the same debt twice even though the interposition here is by the sovereign". In the instant case, at least, the appellant is in no such danger. As Chief Judge Parker well observed in United States v. Eiland, 4 Cir., 1955, 223 F.2d 118, 121–122:

"* * * payment to the government pursuant to the levy and notice is a complete defense to the debtor against any action brought against him on account of the debt. [Cases cited.]"

8. *Conclusion*

No strained theories of setoff, relation back, or the like can frustrate the sovereign from collecting its taxes in this case. The stubborn principle remains, under the facts of this case, that the appellant is liable for failing to surrender, after levy and demand, the bank account to which the liens had attached.

Accordingly, the judgment is

Affirmed.