## Hurst Estate

*High, Swartz, Childs & Roberts, Victor J. Roberts, Schnader, Harrison, Segal & Lewis, J. Pennington Straus, Martin H. Yusem* and *William M. Barnes,* for petitioners.

*Leon H. Fox, William B. Allen, Desmond J. McTighe, Jean B. Green* and *LaBrum & Doak,* for respondents.

*Henry R. Heebner, Jr.,* and *William J. Hagen,* for intervener.

TAXIS, P. J., September 1, 1961.—The two petitions before the court were filed on July 17, 1959. The first is

the petition of Russell C. Pullinger and Gilbert A. Sitler, administrators d.b.n.c.t.a. of the estate of Winfred S. Hurst, deceased; and it sets forth in brief that petitioners are successor fiduciaries to Harry J. Alker, Jr., executor, who, on or about February 4, 1951, filed a false and fraudulent Federal estate tax return for this estate. After prolonged negotiations, a penalty therefor was assessed against the estate in the amount of $28,180.78. The petition further recites that Harry J. Alker, Jr., is a residuary beneficiary under this decedent's will, and that the proceeding is instituted under the Estate Tax Apportionment Act of August 24, 1951, P. L. 1405. Finally, it requests that the aforesaid fraud penalty be apportioned solely against the share of Harry J. Alker, Jr., in the estate, and that the petitioners be authorized to collect any balance of the penalty not covered by such share by other legal process.

Harry J. Alker, Jr., filed an answer to the said petition denying its material averments, and also set forth new matter, alleging generally that the penalty in question was paid without consulting him or communicating with him in any way, and that by a supplemental adjudication of this court, dated December 8, 1955, he was relieved of further surcharges. A reply to this new matter was filed, and in addition, on October 5, 1960, the United States of America was granted leave to intervene because of its position as an attaching creditor of Mr. Alker's interest in the estate. The United States also filed an answer to the petition.

The second petition, also filed by Mr. Pullinger and Mr. Sitler, is directed against J. Harry LaBrum and Gilbert Pleet, liquidating trustees of Dublin Hosiery Mills. It recites that decedent owned 1,300 shares of the stock of that corporation at his death, and that subsequent thereto it was dissolved and its remaining assets transferred to the respondents. It further sets forth that petitioners have in their possession a certificate for

162½ shares of the corporate stock, and that the trustees hold funds representing the corresponding dissolution dividend. The petition also sets forth that it is brought under section 501 of the Fiduciaries Act of April 18, 1949, P. L. 512, and requests that the trustees be ordered to turn over the dividends in their possession to the petitioners.

The liquidating trustees filed an answer to this petition, and in new matter recite that they have refused distribution of the money in question because Harry J. Alker, Jr., is record owner of the stock in question, and because the said trustees were served, on July 11 and 12, 1957, with a Federal tax levy prohibiting the distribution of the dividends held by them. The liquidating trustees request this court to award "the subject fund to such persons as may be found legally entitled thereto," and to award the trustees their costs in this proceeding, including counsel fees. This new matter was put in issue by a reply, and both the United States and Harry J. Alker, Jr., have intervened and filed answers.

Winfred S. Hurst died on November 7, 1949. The Federal estate tax return for his estate was filed by Harry J. Alker, Jr., executor, on or about February 4, 1951. Issues arose relating to the valuation of assets, with the result that final determination of the total tax liability had not been made by June 22, 1955, when the first adjudication was filed by this court. This adjudication dealt with many problems which had arisen during Mr. Alker's administration, including extensive surcharges against him, and was followed on August 17, 1955, by a settlement agreement between the various parties, purporting to cover the remaining disputes. Such agreement was incorporated in a supplemental adjudication which, among other dispositions, awarded to Harry J. Alker, Jr., residuary legatee, one-eighth of the shares of Dublin Hosiery Mills, Inc., owned by the

estate. This award was made ". . . subject to the payment of such additional Federal Estate Taxes and Pennsylvania Transfer Inheritance Taxes as may properly be found to be due. . . ."

The supplemental adjudication also appointed three escrow agents, Robert H. Rissinger, Martin H. Yusem, Esq., and J. Pennington Straus, Esq., to take possession of the balance of the assets of the estate from Mr. Alker. These agents received about $24,000 in cash and the 1,300 shares of Dublin Hosiery Mills, Inc. Since it appeared at that time that the maximum additional tax liability could not exceed $18,000, the Dublin shares were transferred of record to the distributees named in the adjudication. Thus, on January 3, 1956, 162½ of the said shares were registered in the name of Harry J. Alker, Jr., and a stock certificate issued in Mr. Alker's name. The certificate was delivered to Mr. Rissinger, as Mr. Alker's representative on the board of escrow agents, and is presently held by the administrators.

On March 8, 1956, Mr. Alker was indicted in the United States District Court for attempting to evade and defeat estate taxes in this estate. He was removed as executor about two months later, and was succeeded by Mr. Pullinger and Mr. Sitler. On April 8, 1957, he was convicted of the crime with which he had been charged. As a consequence, the United States Government asserted a civil penalty for fraud against the estate, which, under the Internal Revenue Code of 1939, section 3612(d)(2), amounts to 50 percent of the total tax due. Appeals in the criminal matter continued until November, 1958, when the Supreme Court of the United States denied certiorari. Over this period, the administrators and their tax counsel had, through many conferences and with great patience, convinced the Internal Revenue Service that there should be no estate tax deficiency assessed.

The estate tax paid at the filing of the return amounted to $112,723.10, and although the government agreed not to assess any deficiency in tax as such, it insisted upon a civil fraud penalty. The basis for this position was Mr. Alker's false and fraudulent act in omitting some $35,000 in cash from the original return. Again the administrators and their counsel negotiated diligently, and ultimately convinced the government to accept a penalty of $28,180.78, one-half of the amount due under the Revenue Code. On March 30, 1959, this deficiency was assessed by agreement, and shortly thereafter was paid in full. Several hundred dollars of this payment were provided by the distributees of the Dublin stock, other than Mr. Alker.

On July 11 and 12, 1957, as a result of other transactions, the Federal government levied on any property or interests in property of Mr. Alker held by the liquidating trustees. The liquidating dividends attributable to the certificate in Mr. Alker's name amount to approximately $9,600.

The petition for apportionment was filed under the Estate Tax Apportionment Act of 1951, 20 PS §881 et seq. However, the effective date of that act is August 24, 1951, and it does not apply to estates for which the original tax return was filed prior to that date. The applicable statute, therefore, is the Estate Tax Apportionment Act of July 2, 1937, P. L. 2762, 20 PS §844. This act requires that such taxes "be equitably prorated among the persons interested in the estate . . ." and provides that such equitable proration shall mean division among the beneficiaries in proportion to their respective distributive shares. The act does not, however, touch upon the present situation, where a penalty has been incurred because of the actions of one of several distributees. In Harvey Estate, 350 Pa. 53, the Supreme Court quoted with approval the following language in the opinion of the lower court: ". . . it is

unquestionable that the purpose of the Pennsylvania Act is to equitably apportion the burden of the tax. Therefore, in our opinion the application of the equitable doctrine of contribution demands that the tax be borne commensurately by those whose gifts contribute to the tax burden and conversely that there be eliminated from such burden all whose legacies do not in any way create or add to the tax."

In that case the court was dealing with the problem of apportionment against the share of a charitable gift which qualified as a deduction for tax purposes, but the language used demonstrates that the principle being applied is substantive, and did not originate with the language of either of the statutes mentioned. It is true that both statutes prescribe the equitable principles applicable to situations to which they apply; but neither purports to abrogate the duty of this court to apply the equitable doctrine of contribution under appropriate circumstances, simply because such circumstances relate to the payment of estate taxes.

Upon this view, it is appropriate to note the language in section 3(c) of the 1951 Act, 20 PS §833c, which, although technically inapplicable, indicates very clearly the present view of the legislature in a situation such as this. The language is as follows:

"When the orphans' court shall find that it is inequitable to apportion interest and penalties in the same manner as the principal of the estate tax by reason of special circumstances, it may direct apportionment of interest and penalties in a manner different from principal."

In the case at hand, Mr. Alker's actions have been the sole substantial cause of a tax penalty of more than $28,000. Since no such penalty was contemplated at the time the supplemental adjudication was filed, there is no substance to the argument that that adjudication, in providing as it did that the surcharges against Mr.

Alker were to be eliminated, prevents the apportionment here requested. The problem at hand initially arose after this adjudication was filed; and inevitably some apportionment must now occur, whether *pro rata* or otherwise, since additional taxes have in fact been paid. As a matter of fact, the adjudication expressly recognized that some estate tax problems remained open when distributions were made subject thereto. That the court or counsel did not forsee the exact nature or full extent of those problems cannot now be used to the disadvantage of wholly innocent persons.

Mr. Alker also complains that he was not a party to the tax settlement, that he was not consulted in regard to it, and that the agreed penalty was unreasonable and should not have been paid. Without discussing the record at great length, the court can state that it is not convinced that Mr. Alker has been abused. It cannot earnestly be contended that the successor administrators, laboring as they did under great responsibility and confronted by unexpected problems created by Mr. Alker, should have turned to him or attempted to satisfy him in their solution.

The court concludes, therefore, that the relief requested in the petition for apportionment should be granted.

The petition to turn over assets is, in effect, an action to implement the relief sought in the petition for apportionment. At the present time, the sole asset against which the administrators can enforce their claims against Mr. Alker is the fund presently in the possession of the liquidating trustees. The trustees are essentially stakeholders, and have refused to pay over the fund because of prior claims thereto by Mr. Alker as distributee and the United States Government as lien creditor.

The petition to turn over assets recites that it is brought under section 501 of the Fiduciaries Act of

1949, 20 PS §320.501. However, decedent in this case died about two months prior to the effective date of this law, and hence we must look to the law prior to the 1949 Act. The matter of possession of personal property of a decedent is not specifically covered by the Fiduciaries Act of June 7, 1917, P.L. 447, but a reading of section 11(c) thereof, requiring all personal property to be included in the inventory of the estate, together with the authority of cases such as Rumsey's Estate, 287 Pa. 448, leaves no doubt that the administrators are entitled to possession of all personal property owned by the estate. There is thus ample basis for the petition outside the provisions of the Fiduciaries Act of 1949.

As to Mr. Alker's claim, little need be said. Although the stock was transferred to his name on the books of the corporation, and a new certificate therefor issued, he was never allowed to come into possession of either the certificate or any part of the proceeds of the liquidation. According to the testimony of J. Pennington Straus, Esq., it was not contemplated to make such distribution to any of the interested parties prior to 1957; by that time the probability of extensive additional tax liability because of Mr. Alker's actions had arisen, and both dividends and certificate were retained. There has, therefore, been no distribution to Mr. Alker, under which he could obtain rights prior to those of the estate against the fund in the hands of the liquidating trustees.

In regard to the claim of the Federal government under its levy, the Internal Revenue Code of 1954, section 6321, provides that such a lien, when filed, encompasses all property or rights to property of the delinquent taxpayer, and in this respect is distinct from, for example, judgment liens, which under Pennsylvania law encumber only real estate in the absence of some execution process. Counsel for the United States

has cited United States v. Liverpool & London Globe Insurance Co., Ltd., 348 U. S. 215, and Bank of Nevada v. United States, 251 F. 2d 820 (9th Cir.). The facts of these cases are somewhat involved, and it is not necessary to detail them here. It is sufficient to point out that both of them deal with the matter of *priorities* between tax liens and, respectively, a writ of garnishment, and a set-off agreement between a bank and a depositor. Such authority, however, does not govern here, for Harry J. Alker, Jr., has at the present time no interest in the liquidating dividend in question, because of the decision of this court with respect to the apportionment question. Counsel for the United States recognizes that the tax lien can have no effect under these circumstances for he makes the following preliminary statement as a premise to his brief: "There is no question here that Mr. Alker had and still has a right to the monies now held by the liquidating trustees." This is not a correct statement, and the result is that the United States lien has attached nothing. The situation is no different in result from the attachment of the interest of a distributee in an estate which ultimately winds up insolvent.

The liquidating trustees of the Dublin Hosiery Mills, Inc., have requested the court, in any award of the fund presently in their possession, to allow them to pay record costs and a reasonable counsel fee therefrom. This court has ample authority, of course, to allow counsel fees to fiduciaries, but its jurisdiction is generally limited to that situation, and no plenary power exists to award fees simply because a party is within the jurisdiction of the court. It is fundamental that the court, for example, has no jurisdiction to determine fees between a distributee and his attorney, unless the said attorney has a specific interest in or lien on the fund which legally raises him to the rank of a distributee as well: Purman Estate, 358 Pa. 187. No

facts exists here which give counsel for the liquidating trustee any interest in this fund, nor are the trustees the type of fiduciaries to whom counsel fees may be awarded by this court. The trustees in this matter have been simply protecting their own interest, and the rule of Sowers Estate, 383 Pa. 566, applies.

Accordingly, the prayer of the petition to turn over assets is granted, and J. Harry LaBrum and Gilbert Pleet, liquidating trustees of the Dublin Hosiery Company, Inc., are ordered to pay over the liquidating dividends in their hands to Russell C. Pullinger and Gilbert A. Sitler, administrators d.b.n.c.t.a. of the estate of Winfred S. Hurst, deceased. It is further ordered and decreed that the tax penalty of $28,180.78 shall be apportioned against the distributive share of Harry J. Alker, Jr., and that should such share ultimately be insufficient to satisfy the said penalty, the court upon application will enter a judgment for the deficiency or grant such other remedy as is appropriate.