**CAMPAGNA–TURANO BAKERY, INC.,**
**Plaintiff–Appellee,**

v.

**UNITED STATES of America,**
**Defendant–Appellant.**

**No. 79–2355.**

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 8, 1980.

Decided Oct. 3, 1980.

Rehearing Denied Oct. 29, 1980.

---

**40**

Stephen Gray, Tax Division, Dept. of Justice, Washington, D. C., for defendant–appellant.

Louis W. Levit, Chicago, Ill., for plaintiff–appellee.

Before SWYGERT and SPRECHER, Circuit Judges, and DUMBAULD, Senior District Judge.*

SPRECHER, Circuit Judge.

█ This case presents the question of whether a debtor is entitled to costs and attorneys' fees when it brings an interpleader action in which the amount the debtor owes is insufficient to satisfy federal tax liens when the federal tax liens attached after the contract creating the debt but before the filing of the interpleader. We hold that the interpleading debtor may not recover its costs and attorneys' fees at the expense of the tax liens.

**I**

In November, 1974, the Campagna–Turano Bakery, Inc. ("Campagna") entered into a contract to purchase office furniture, bakery equipment, and store contents from the Yamo Baking Company ("Yamo"). The purchase price was $60,000; $30,000 was paid in cash to Yamo upon execution of the contract and the remaining $30,000 was payable in 30 monthly installments of $1,000. After having made four payments of $1,000, Campagna ceased paying Yamo, leaving a balance due of $26,000. In December, 1975, Campagna filed a complaint interpleading several defendants, including the United States, who might have claims superior to Yamo's to the $26,000 still owed by Campagna. The United States had duly recorded two series of tax liens against Yamo: $22,997.23 in liens (Lien 1) recorded prior to the November, 1974, contract, and $8,842.58 in liens (Lien 2), recorded after the November, 1974, contract but prior to Campagna's December, 1975, interpleader action.

In the interpleader action, the District Court awarded $22,997.23, the amount of Lien 1, to the United States. The court awarded $3,002.77 to Campagna as costs and attorneys' fees.[1] These awards equalled the $26,000 still owed by Campagna.[2] The government argues that the District Court could not award an amount for costs and attorneys' fees while valid tax liens remained outstanding. We agree, and reverse.

**II**

If any taxpayer fails to pay a tax after notice and demand, 26 U.S.C. § 6321 (1954) creates a lien on all property belonging to that taxpayer. This tax lien becomes effective immediately and, upon notice, has priority over all other claims to the lien–encumbered property, except those claims enumerated in § 6323.

There is no dispute that the first tax lien, securing $22,977.23, is superior to Campagna's claim for costs and attorneys' fees. Notice of the lien was given prior to the November, 1974, contract. But Campagna

---

* Senior District Judge Edward Dumbauld of the Western District of Pennsylvania is sitting by designation.

1. All of the defendants named in the interpleader complaint, except the United States, failed to answer; default judgments were entered against them.

2. The District Court ordered that the $34,000 worth of assets already purchased by Campagna be discharged from any and all tax liens against Yamo. These funds are not at issue in this appeal.

argues that the second lien, filed after the contract, is not superior to its claim for costs and attorneys' fees.

The Campagna argument is as follows. Lien 2 could only attach to such property as Yamo then owned. But Yamo did not "own" the $26,000 owed to it from Campagna: it merely owned a "non–negotiable chose in action" for the balance due on the purchase contract. Thus, the argument continues, the government, by virtue of its lien, acquired a status similar to that of a garnishee and could assert only those rights which Yamo could have asserted. Yamo certified in the November, 1974, contract that all of its property had been free and clear and that all taxes were paid or would be paid within thirty days. Since Yamo violated that contractual certification, Campagna argues that it would have the right to offset the expense of the interpleader against the debt otherwise due to Yamo. Thus, the argument concludes, if the government must stand in the shoes of Yamo, Campagna should have the right to offset the expense of the interpleader against the government's Lien 2.

Campagna's argument is creative, but it is not the law. The law is that a court may not diminish the amount available for satisfaction of a federal tax lien by awarding costs and attorneys' fees to an interpleading plaintiff. Section 6323 of the Federal Tax Lien Act of 1966 is the exclusive source of exceptions to the priority of federal tax liens. Unfortunately for Campagna, § 6323 creates no exception to the superiority of federal tax liens for the claims of interpleading plaintiffs who incur expenses for court costs and attorneys' fees.

Not only does § 6323 not provide a relevant exception, but the claim raised by Campagna is similar to that raised by interpleading plaintiffs but rejected in a plethora of cases. In *United States v. Liverpool & London Ins. Co.*, 348 U.S. 215, 75 S.Ct. 247, 99 L.Ed. 268 (1955), the issue before the Supreme Court required a determination of priority between federal tax liens and a garnishment lien. The garnishee had filed suit to have priority established and then requested costs and attorneys' fees. The Supreme Court first found that the federal tax lien was superior. It then held that costs and attorneys' fees could not be awarded prior to satisfaction of the tax liens.

The Supreme Court reached a similar result in *United States v. R. F. Ball Construction Co.*, 355 U.S. 587, 78 S.Ct. 442, 2 L.Ed.2d 510 (1958). There, the Court summarily reversed a decision awarding costs and attorneys' fees to an interpleading plaintiff. The Court held that the *Liverpool & London* decision controlled claims by interpleaders for costs.

This court, in *Bjork v. United States*, 486 F.2d 934 (7th Cir. 1973), reached a result compatible with the Supreme Court's decisions in *Liverpool & London* and in *Ball*. Finding that a federal tax lien was valid and had attached, this court held that the tax lien necessarily precluded an award of costs and attorneys' fees to an interpleading plaintiff unless there was some amount remaining after satisfaction of the tax lien.

These and other decisions in the Tax Court and in every circuit which has considered the issue have consistently held that an interpleading plaintiff cannot be awarded costs and attorneys' fees when such an award would diminish the amount available to satisfy a federal tax lien.[3] Campagna

---

**3.** *See Hinkley & Donovan v. Paine*, 424 F.Supp. 1013, 1021 (N.H.1977) (disinterested bank–stakeholder who had filed an interpleader not entitled to costs and attorneys' fees when amount available was insufficient to satisfy prior federal tax liens); *United States v. State National Bank of Connecticut*, 421 F.2d 519 (2d Cir. 1970) (no claim for attorneys' fees is enforceable when the available funds are insufficient to satisfy a judgment based on prior federal tax liens). *Accord, MDC Leasing Corp. v.*

*New York Property Ins. Underwriting Ass'n.*, 450 F.Supp. 179 (S.D.N.Y.1978), *aff'd*, 603 F.2d 213 (3d Cir. 1979); *Corwin Consultants, Inc. v. Interpublic Group of Companies, Inc.*, 375 F.Supp. 186, 193 (S.D.N.Y.1974), *rev'd on other grounds*, 512 F.2d 605 (2d Cir. 1975); *Pennsylvania Insurance Co. v. Long Island Marine Supply Corp.*, 229 F.Supp. 186, 188 (S.D.N.Y.1964); *United States v. Henry's Bay View Inn, Inc.*, 191 F.Supp. 632, 634 (S.D.N.Y.1960); *United States v. Wilson*, 333 F.2d 147, 149 (3d Cir.

does not even address these cases or attempt to distinguish the facts in its situation from this clear line of authority. But ignoring precedent will not make the cases go away.

### III

Campagna's primary argument[4] is that the government's tax lien attached only to a chose in action–not to the amount of $26,000 still due to Yamo–and that costs and attorneys' fees can be an offset against the government's lien. But allowance of such an offset was specifically rejected by the Supreme Court in *United States v. Pioneer American Ins. Co.*, 374 U.S. 84, 83 S.Ct. 1651, 10 L.Ed.2d 770 (1963). In *Pioneer*, a mortgage contract between a defaulting taxpayer and his mortgage company provided that the mortgagee would be entitled to its costs and attorneys' fees if the taxpayer–mortgagor defaulted on his payments. After such a default did occur, the United States secured a § 6323 tax lien against the mortgaged property. The United States

conceded that its tax lien was subordinate to the prior mortgage but contended, however, that its tax lien was superior to the mortgagee's claim for costs and attorneys' fees out of the remaining proceeds from the sale of the mortgaged property. The United States argued that the mortgagee's claim for its costs and attorneys' fees could not become choate until after they had been incurred and this *per se* did not occur until after the tax lien attached. The Supreme Court agreed, holding that the claim for attorneys' fees was necessarily inchoate at least until the tax liens attached and that the tax liens must have priority.[5]

Campagna's situation is similar to the situation in *Pioneer*. Campagna filed its interpleader complaint in December, 1975. By that time, federal tax liens in excess of the $26,000 due to Yamo had attached and had been duly recorded. Thus, well before Campagna incurred any expenses in prosecuting the interpleader suit, the amount due to Yamo had been completely impressed with perfected federal tax liens.

1964); *United States v. Administrator of Estate of McCall*, 313 F.Supp. 1399, 1402–03 (M.D.Pa. 1969); *Spinks v. Jones*, 499 F.2d 339 (5th Cir. 1974); *Short v. United States*, 395 F.Supp. 1151, 1155 (E.D.Tex.1975); *Texas Oil & Gas Corp. v. United States*, 340 F.Supp. 409, 411 (W.D.Tex.1971), *aff'd*, 466 F.2d 1040 (5th Cir. 1972), *cert. denied*, 410 U.S. 1040, 93 S.Ct. 1367, 35 L.Ed.2d 591 (1973); *Uhlhorn v. Owens*, 211 F.Supp. 798, 802–03 (S.D.Tex.1962); *Bank of America Nat. Trust & Sav. Ass'n. v. Mamabos*, 509 F.2d 1217, 1219–20 (9th Cir. 1975); *C.I.T. Corp. v. United States*, 344 F.Supp. 1272, 1277 (N.D.Cal.1972); *United States v. Chapman*, 281 F.2d 862, 870–71 (10th Cir. 1960).

4. In the proceedings below, Campagna argued that it was a "purchaser" within the meaning of § 6323 and therefore entitled to the priority accorded by that section to purchasers. The District Court's order was based on this argument. On appeal, however, Campagna has abandoned this argument, both in the brief and at oral argument. Therefore, that argument is not considered in this opinion.

Campagna also claimed on appeal that some undelineated new argument was raised by the United States on appeal with regard to "post-purchase levies". But Campagna's argument is groundless. The United States has consistently claimed the entire fund on the theories relied on in this appeal.

5. The Court stated:

[I]t is equally apparent that the amount of the lien for attorney's fees was undetermined and indefinite when the federal tax liens in question were filed. The mortgage held by respondents secured a promissory note which obligated the mortgagor maker to pay a 'reasonable attorney's fee' 'in the event of default' and 'of the placing of this note in the hands of an attorney for collection.' By the time the federal liens subordinated by the Arkansas courts were placed of public record, default had occurred, the mortgagee had elected to declare the note due and payable, an attorney had been engaged and a suit to foreclose the mortgage had been filed. But the 'reasonable attorney's fee'–reasonable in relation to the service to be performed by the attorney–had not been reduced to a liquidated amount. The final amount was to be established by court decree that the Chancery Court set the fee considerably below the sum requested. Moreover, there is no showing in this record that the mortgagee had become obligated to pay and had paid any sum of money for services performed prior to the filing of the federal tax lien.

374 U.S. 84, at 90–91, 83 S.Ct., at 1656 (footnote omitted).

Any amount for costs and attorneys' fees could only become choate after the interpleader action had been heard and after the court specified an allowable amount. *Pioneer*, 374 U.S. at 91, 83 S.Ct. at 1656. Thus, Campagna's "offset" theory fails because there never was any choate amount to be offset before the federal tax liens had attached and had been recorded.

Campagna argues that *Pioneer* is inapposite because it does not deal with a situation where the claim for attorneys' fees is a "direct offset" against the chose in action to which the government has succeeded. But Campagna's argument begs the question. None of the attorneys' fees cases involves a "direct offset" because all courts have determined that no "direct offset" is allowed. Indeed, *Pioneer* emphasizes that, until the court award, there is not even a choate claim, let alone a "direct offset."

Campagna suggests that the fact that Yamo misrepresented its tax status implies a right to an offset for attorneys' fees. Its argument is that since Yamo misrepresented itself as having no tax liability, and since the interpleader was necessary because Yamo did have a tax liability, then Yamo should be liable for costs and attorneys' fees relating to the interpleader. We do not decide that question. But even if an offset were allowed in a case between Campagna and Yamo, it could not be allowed in the present case. *Pioneer* clearly teaches that costs and attorneys' fees cannot be offset against a tax lien while they remain inchoate, and that costs and attorneys' fees necessarily remain inchoate until the actual award by the court.

Indeed, the circumstances in *Pioneer* were even more favorable to the interpleading plaintiff than they are here. There, the contract giving rise to the interpleaded fund specifically stated that attorneys' fees and costs would be granted to an inter-

pleading plaintiff. The *Pioneer* court found that such language made no difference; the claim remained inchoate. In the Campagna–Yamo contract, there is not even such specific language relating to attorneys' fees. The relevant language is merely Yamo's certification that it had no tax liabilities. That certification cannot change the *Pioneer* result.

Campagna relies on *United States v. Winnett*, 165 F.2d 149 (9th Cir. 1947), where the court found that the rights of the government do not extend beyond those of the taxpayer whose right to property is levied upon. But Campagna's reliance is misplaced. *Winnett* did not deal with attorneys' fees but involved a written notice of limitation of interest established prior to the attachment or recording of federal tax liens. *Winnett* had borrowed money from Summers and later endorsed a note from Summers to a bank. The written contract between the parties stated that if Summers defaulted and Winnett was called on to make payment, the amounts so paid could be offset against the amounts due on Winnett's note to Summers. Summers did default and Winnett paid the bank accordingly. Shortly before the default, the government filed a tax lien against Summers and subsequently levied on Winnett for the entire debt. The court found that the government was only entitled to the amount of Winnett's debt to Summers remaining after the offset because the limitation of interest and right of offset had been reduced to writing before any tax liens had attached. In effect, the court found that the claim had been choate.[6] But attorneys' fees claims, of course, are not choate until established and awarded by a court. Thus, the *Winnett* decision offers no reason for departing from the *Pioneer* result. Similarly, the cases cited by *Campagna* as following

---

**6.** The court stated:

> These writings served as a notice of litigation of Summers' interest in the note to all who might subsequently take the note, either as purchaser for value or for a pre–existing debt. One choosing to reach this chose–in-

> action belonging to Summers by attachment or garnishment could acquire no greater right against Winnett than that possessed by Summers. This would hold true even though the sovereign initiated the proceeding.

165 F.2d 149, at 151 (footnote omitted).

*Winnett* do not deal with attorneys' fees and are equally unavailing.[7]

## IV

Campagna argues persuasively that the result we reach is inequitable. Although not legally required to bring an interpleader action, it was forced to do so in order to avoid liability exceeding the amount of the debt owed to Yamo. Now, it is unable to recover costs and attorneys' fees resulting from the initiation of that action. Perhaps § 6323 should contain an exception for plaintiffs in Campagna's situation. But it is for Congress, not this court, to write that exception.

Finally, Campagna argues that the government's position in this case is unconscionable. First, the government allowed Yamo to incur serious delinquencies but made no serious effort to collect the taxes due. Then, Campagna providently provided the government with a convenient forum for the collection of the tax liens, yet the government responded with numerous technical and procedural objections. But Campagna cites no law, and we know of none, requiring the government to move rapidly on all tax delinquencies. As to the government's technical and procedural objections,[8] we cannot compel good sportsmanship.

REVERSED.

## ORDER

On consideration of the petition for rehearing filed in the above-entitled cause by plaintiff-appellee, all of the judges on the original panel having voted to deny the same,

IT IS HEREBY ORDERED that the aforesaid petition for rehearing be, and the same is hereby, DENIED.

 The Court considered the effect of the 1966 amendment to § 6323 in the course of its consideration of the case. This amendment was a general recodification of § 6323, creating new statutory exceptions to the validity of federal tax liens. Campagna cites no legislative history, and in our research we found none, suggesting this amendment was intended to include situations such as Campagna's. Campagna's situation is not covered by any of the statutory exceptions in § 6323. The federal tax lien, therefore, is valid. Section 6323(e) only allows attorneys' fees with regard to situations where a federal tax lien is *not* valid. Thus, § 6323(e) does not support Campagna.

This order shall be published immediately following the opinion in this case.

---

7. Campagna cites two other cases in support of its argument that the tax lien attached to Yamo's claim against Campagna was subject to a set–off for costs and attorneys' fees. Neither case, however, dealt with costs and attorneys' fees, and both cases involved choate claims prior to tax liens. In *Stuart v. Willis,* 244 F.2d 925 (9th Cir. 1957), the court held that the government's levy upon the property of joint venturers, to liquidate the tax liability of one venturer alone, was void. In *Karno–Smith Co. v. Maloney,* 112 F.2d 690 (3d Cir. 1940), the court held that an insolvent subcontractor had no enforceable right to monies held by a general contractor, but subject to a valid supplier's claim. Consequently, tax liens against the subcontractor could not reach the same monies. Neither case directly supports Campagna's argument and neither is inconsistent with the *Pioneer* opinion.

8. Campagna complains that the government first sought to dismiss this action in District Court for lack of jurisdiction but then made it clear that, once the plaintiff refiled in state court, it would remove the case back into federal court. We confess we cannot understand this strategy. But we make no opinion as to the propriety of these actions and find they have no relevance to the issue on appeal.