**J. A. WYNNE CO., INC., a Florida Corporation, and Ohio Casualty Insurance Company, an Ohio Corporation, Plaintiffs,**

v.

**R. D. PHILLIPS CONSTRUCTION CO., INC., a Florida Corporation, Keene Hauling Inc., a Florida Corporation, Southern Paving Company, a Florida Corporation, and Tenneco Oil Company, a Delaware Corporation, and United States of America, Defendants.**

**No. 77–141–ORL–CIV–Y.**

United States District Court,
M. D. Florida,
Orlando Division.

March 22, 1977.

Gordon H. Harris, Gray, Adams, Harris & Robinson P. A., Orlando, Fla., for J. A. Wynne Co., Inc. & Ohio Casualty Ins.

Rodger M. Moore, Trial Atty., Tax Div., Dept. of Justice, Washington, D. C., for United States of America.

Arthur G. Leonhardt, Jr., Leonhardt, Trickel, Leigh & Gibson, Orlando, Fla., for Keene Hauling, Inc.

James E. Foster, Fishback, Davis, Dominick & Simonet, Orlando, Fla., for Southern Paving Co.

Hugh M. Palmer, Orlando, Fla., for Tenneco Oil Co.

## MEMORANDUM OPINION

GEORGE C. YOUNG, Chief Judge.

This cause came before the Court for hearing on plaintiffs' motion for summary judgment against the United States of America, on the cross motion of the United States for summary judgment against plaintiffs, on defendant Keene's motion for summary judgment against plaintiffs, and on the plaintiffs' motion for default judgment against R. D. Phillips Construction Company, Inc. The cause arises under the Wrongful Levy Statute, 26 U.S.C. § 7426(a).

### FACTUAL BACKGROUND

On April 1, 1976 the defendant Tenneco Oil Company entered into a written agreement with plaintiff J. P. Wynne Company, Inc. (Wynne), a general contractor, for the construction of a combination service station and convenience food store in Orange County, Florida (Exhibit "A" of the complaint). Under the terms of the agreement

Wynne was required to secure a performance and payment bond and it obtained such a bond from the plaintiff, Ohio Casualty Insurance Company (See Exhibit "B" of the complaint).

Wynne subcontracted with the defendant, R. D. Phillips Construction Company, Inc. (Phillips) for the concrete and asphalt paving portions of the project. Under their written agreement (Exhibit "H" of the complaint), Phillips was entitled to monthly progress payments calculated on the basis of invoices it submitted to Wynne.

In order to perform its side of the bargain, Phillips entered into subcontracts with the defendants Southern Paving Company and Keene Hauling, Inc. (Keene). Southern Paving did the asphalt work, and Keene supplied and delivered the necessary paving material.

In July Wynne received a progress payment from Tenneco. Under the subcontract, Wynne was obligated to pay a portion of the money received from Tenneco to Phillips as a progress payment. On July 12, 1976, Keene sent a cautionary notice to the owner indicating its intention to pursue its rights under the Florida Mechanics Lien Law. Fla.Stat. § 713.06(2)(a). Keene began work on July 13 and Southern Paving on July 22. Keene completed its work on July 20. On July 23, the Internal Revenue Service served Wynne with notice of levy of the $10,675.54 progress payment that Wynne was holding for Phillips. The IRS was seeking to satisfy Phillips' unpaid tax assessments and penalties. Wynne surrendered said amount.

On August 2, Southern Paving completed its work and sent constructive notice to the owner under Florida Mechanics Lien Law. When Phillips did not pay Keene or Southern Paving, they filed mechanics liens on the Tenneco Oil construction site. Wynne and its surety, Ohio Casualty Insurance Company, transferred these liens to bonds pursuant to Fla.Stat. § 713.24 and then brought this action under the Wrongful Levy Statute.

## WYNNE'S MOTION FOR SUMMARY JUDGMENT

Plaintiffs and the IRS have filed cross motions for summary judgment. It appears that there is no genuine issue as to material fact under Fed.R.Civ.P. 56. The basic issue that must be resolved is whether the levy of the IRS was wrongful under 26 U.S.C. § 6331(a). Section 6321 of the Internal Revenue Code of 1954 (26 U.S.C. § 6321) creates a lien in favor of the United States upon "all property and rights to property" belonging to the person who is liable for the unpaid tax. Section 6331(a) authorizes the Secretary of the Treasury to levy upon all property or rights to property on which there is such lien. The question in this case is whether the money that Wynne was holding and which Wynne admits was due to Phillips was *property* or a *right to property* belonging to Phillips, the delinquent taxpayer.

Wynne asserts that the money was not property of Phillips because Wynne was withholding the funds pursuant to paragraph 6 of their contract:

"Subcontractor covenants and agrees with Owner that Subcontractor will promptly pay all obligations for work, labor, services and/or materials incurred by the Subcontractor in the doing of the work required by the terms of this subcontract before any of such obligations become in default. If a person claiming under, by, through, or against the Subcontractor *gives the Contractor or the Owner a cautionary notice*, Contractor shall have the right to *withhold from the progress payments hereinafter referred to* so much of them as in the judgment of the Contractor and approved by the Architects is proper." (emphasis added)

This provision plainly empowers Wynne to withhold progress payments due and owing to Phillips upon the filing of a cautionary notice by a sub-subcontractor. It gives Wynne, in other words, a kind of contractual set-off against Phillips. *Compare Fostmeier Construction Co. v. United States*, 327 F.Supp. 589, 591–2 (N.D.Cal.1971).

Contractual provisions such as these are commonly found in construction contracts because they afford the general contractor some measure of protection from double liability. The contractor will typically be obligated to the owner to see that sub-sub-contractors are paid and he will usually have secured a payment and performance bond conditioned upon his payment of such obligations. See Fla.Stat. § 713.02(6); 22 Fla.Jur., Mechanics Liens, § 54 (1977 Supp.). The general contractor, then, will ultimately bear the loss if his subcontractor does not pay sub-subcontractors. Such was the case here, as the surety bonds and Wynne's contract with Tenneco demonstrate.

Wynne was exercising its right to withhold progress payments when, on July 23, the IRS notice of levy was served. Prior to that date, Tenneco had paid Wynne a sum of money for partial completion of the project. A portion of this money was owed to Phillips but before Wynne could make payment, one of Phillips' subcontractors, Keene, filed on July 20 a cautionary notice pursuant to the Mechanic's Lien Law. Keene's notice triggered the right under the subcontract to "withhold from the progress payments . . . so much of them as in the judgment of the Contractor and approved by the Architects is proper." Wynne had the right to refuse to pay Phillips to avoid the possibility of double liability should Phillips be unable to pay its subcontractors. It was for this reason that Wynne was in possession of the money on July 23.

■ Since Wynne had exercised its contractual right, the question is whether that right gave it a sufficient interest in the funds seized to entitle it to bring a recoupment action under the Wrongful Levy Statute. The Court concludes that it did.

■ One's interest in property seized by the IRS need not be that of an owner in order to sue for its repossession under the Wrongful Levy Statute. The statute expressly provides that those who claim superior liens may also sue under the statute. It seems clear that there are other "interests" in property subject to distraint, not

amounting to ownership and not rising to the dignity of a lien, which will suffice for purposes of prosecuting a wrongful levy action. One such interest, recognized by a number of courts, is that of a contractual right to set-off. *See, e. g., California v. United States*, 195 F.2d 530 (9th Cir. 1952); cert. denied 344 U.S. 831, 73 S.Ct. 36, 97 L.Ed. 647; *United States v. Winnett*, 165 F.2d 149 (9th Cir. 1947), *United States v. Trans-World Bank*, 382 F.Supp. 1100 (C.D. Calif.1974).

Wynne's right to withhold progress payments under the subcontract is not, in the strict sense, a right of set-off. It acquired no right to permanently retain the progress payments and its liability for Phillips' contract performance remains the same. But it nevertheless bears many of the attributes of a right of set-off; for, in effect, invocation of the right deprives Phillips of the right to all or a portion of the progress payments until the subcontract is fully completed or the sub-subcontractors are fully paid. Phillips loses its immediate entitlement to the progress payments.

Once Wynne invoked the right to withhold progress payments from Phillips, it acquired a possessory interest in the payment fund in order to protect itself from double liability. It became, in a sense, a trustee or stakeholder empowered to retain the fund until a later phase of the project when it could determine the amount due Phillips, the amount asserted by unpaid subcontractors, and make disbursements accordingly.

The Service's levy deprived Wynne of the possession of this fund and thereby defeated its ability to make appropriate disbursements to Phillips and its subcontractors. By so doing the Service exposed Wynne, and its surety, to the kind of double liability that the subcontract "set-off" provision was designed to avoid. Without this fund in its possession, Wynne will be forced to pay Phillips' subcontractors, Keene and Southern Paving, out of its own assets. It will have thus suffered an inequitable loss and the taxpayer Phillips, purely as a result of the fortuitous timing of the IRS levy, will

have been unjustly enriched. By the same token the IRS will have acquired funds which do not truly belong to the taxpayer Phillips, for at the time of the service Phillips had no entitlement to the progress payments; they were not even vested "rights to property." Moreover, some portion of the fund equitably belonged to Phillips' subcontractor Keene for its partial performance as of the day of the levy. By the time Phillips would have been entitled to payment, Keene and Southern Paving would have had equitable claims to a large portion of the proceeds.

■ The IRS urges consideration of *United States v. Citizens and Southern Nat. Bank*, 538 F.2d 1101 (5th Cir. 1976). In that case, the Government levied on a depositor's bank accounts. The bank was holding several promissory notes of the depositor. The notes provided that the bank held a lien on all deposits to secure the indebtedness. Additionally, the bank account signature card provided that the bank could refuse to honor orders to pay or withdraw upon receipt of process or lien affecting the account. *Id.* at 1103. The Court of Appeals determined that a depositor under Georgia law is vested with a chose in action as a creditor of the bank. The chose in action was property under §§ 6321 and 6331. The Court then answered the two questions presented. The Court first ruled that the depositor's assignment, which constituted a prior lien under Georgia law, could not be interposed as a defense to enforcement of a tax levy. The Court, secondly, examined the contractual right of setoff and determined that until the bank *exercised* its right of setoff, the depositor was free to withdraw its money. *Id.* at 1107. In the case at bar, however, there was no assignment. Nor was there actually a setoff, although the rationale in the case can be applied in this case. The Court focused on whether the bank *exercised* its contractual right and held that it had not, and therefore was not entitled to setoff. This case can be distinguished in that Wynne *had* exercised its contractual right under paragraph 6 to withhold the funds from Phillips at the time of the levy. Therefore, since the right to withhold had

been exercised by Wynne, Phillips had no "right to property" on which the IRS could levy unless or until it satisfied Wynne that the sub-subcontractors would be paid and that Wynne would not be subjected to double liability. Under this rationale, summary judgment in favor of Wynne and against the IRS is appropriate as to that amount of the levy which was due Southern Paving and Keene.

### KEENE'S MOTION FOR SUMMARY JUDGMENT

Keene Hauling, Inc., seeking summary judgment against Wynne under the performance and payment bond dated April 7, 1976 (Exhibit "B" of the complaint). Keene has submitted an itemized list of labor and material supplied in the amount of $4,029.51. Keene remains unpaid for its work.

Wynne does not dispute its obligation to Keene under the performance and payment bond. Nor does it dispute the amount. Keene has filed an affidavit as to costs of $18.24, but is also seeking attorney's fees for which it has submitted no affidavits as to the amount of attorney's fees. See *Matter of First Colonial Corp. of America*, 544 F.2d 1291 (5th Cir. 1977). Therefore the motion for summary judgment will be granted as to liability and damages, but the Court will defer ruling on the prayer for attorney's fees in order to allow counsel for all parties to file additional affidavits on this issue.

### MOTION FOR DEFAULT JUDGMENT BY WYNNE AGAINST PHILLIPS CONSTRUCTION COMPANY

■ The final motion before the Court is plaintiff's motion for default judgment against Phillips Construction Company, Inc. Default was entered May 5, 1977. No pleadings have been filed by Phillips. However, since the money is to be returned to Wynne by the IRS, the claim for damages is now moot. Therefore, the motion for default judgment will be denied.